426 So.2d 405 (1983)
Arlean JACKSON
v.
STATE of Mississippi.
No. 53573.
Supreme Court of Mississippi.
January 26, 1983.
Roach, McMillan, Welch & Ott, John H. Ott, McComb, for appellant.
Bill Allain, Atty. Gen. by Wayne Snuggs, Asst. Atty. Gen., Jackson, for appellee.
Before BROOM, BOWLING and HAWKINS, JJ.
BOWLING, Justice, for the Court:
Appellant was indicted, tried and convicted in the Circuit Court of Pike County for the crime of murder. She received a sentence of life in the custody of the Mississippi Department of Corrections. On appeal, appellant assigns the following alleged errors:
I. THE LOWER COURT ERRED IN ADMITTING TESTIMONY CONCERNING AN INCRIMINATING WRITTEN STATEMENT MADE BY APPELLANT WHEN THE SAME WRITTEN STATEMENT HAD NOT BEEN FURNISHED TO DEFENSE COUNSEL IN ACCORDANCE WITH THE DISCOVERY REQUEST MADE THEREFOR PRIOR TO THE TRIAL.
II. THE LOWER COURT ERRED IN NOT ADMITTING SUFFICIENT TESTIMONY CONCERNING PRIOR CONVICTIONS AND PRIOR ACTS OF VIOLENCE BY THE DECEASED TOWARDS DEFENDANT.
III. THE LOWER COURT ERRED IN THAT THE VERDICT WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE ON THE ISSUE AS TO WHETHER OR NOT THE APPELLANT, ARLEAN JACKSON, ACTED IN SELF-DEFENSE.
On March 14, 1981, at approximately 4:00 p.m., one Sedrew Brock died from a bullet wound to the head that had been fired from a gun held by appellant, Arlean Jackson. The shooting occurred in front of a well-known and well-patronized country store. There were a number of witnesses. Although, as is usually the case, the testimony of these witnesses was contradictory, the essential evidence was largely undisputed.
Appellant was twenty-one years of age. For approximately one and a half years prior to August 1980, she and Sedrew Brock had lived together, although each had a spouse the entire time. A child was born to this adulterous relationship. Undisputedly, the lovers had a rather stormy liaison. This continued from their breakup in August 1980 until the shooting on March 14, 1981. *406 On a number of occasions appellant filed complaints with Justice Court Justices as a result of alleged assaults by the deceased. Most of these complaints resulted in convictions, but never any penalty more than a fine.
On the day of Mr. Brock's death, he, his father-in-law, and another male witness were in front of the store talking when appellant, her sister Imogene Nelson, and several small children drove up to the store for the purpose of purchasing groceries. Only appellant went into the store. It is admitted by the witnesses that after appellant went into the store, Brock used a form of profanity and followed her into the building. He was in the building only a few minutes and came out still admittedly using profane words directed toward appellant. Appellant then came out of the store and was obviously upset, evidenced by crying.
We now discuss the evidence of appellant material to the issues before us. She testified that while she was in the back of the store, Brock came up to her using profanity, put both his hands around her throat and started choking her. She was able to get him to stop as persons were in various parts of the store. [Another eye-witness shopping nearby verified appellant's evidence of being choked.] Appellant testified that she had been so harassed by Brock that she had to scare him in some form to make him leave her alone. Also parked outside the store was a van owned by appellant's cousin. Appellant testified she knew he kept a pistol in the console of the van. Knowing this, she secured the pistol, although she was unfamiliar with operating firearms. Holding the pistol with both hands with the barrel of the pistol pointing toward the ground, she then approached Brock and the other two men standing by the pickup of Brock. She stated that she was crying and upset and told Brock to leave her alone from then on. According to her and the other witnesses, Brock started walking toward appellant with his right hand in his right pants' pocket. Appellant told him to come no further, but he continued. Indisputably, appellant then fired the pistol over the head of the deceased. He kept coming and according to appellant she started pulling the trigger as fast as she could. One bullet struck Brock in the head, killing him instantly. The appellant testified that at all times during the year and a half she and Brock were living together, he carried a pistol on his person.
Appellant was indicted on March 18, 1981, and the case was set for March 25. At the request of the court-appointed attorney for appellant, the trial was reset for April 5, 1981. On March 23, appellant's attorney filed a request for discovery under the terms of Rule 4.06 of the Mississippi Uniform Criminal Rules of Circuit Court Practice. No confession or any other type of statement by appellant, either written or transcribed, was furnished appellant's attorney by the state.
At the trial the state first introduced witness Bruce Fairburn, a Pike County Deputy Sheriff. He testified he received a call at about 4:15 p.m. on the date of the shooting. He picked up another deputy and went to the store. He testified that he saw a black male lying on the ground and a lady [who later developed to be the appellant] standing nearby with a gun in one hand and the other hand across her face, and crying. Fairburn walked over toward appellant and she gave him the gun. Fairburn testified that he then had appellant sit on the backseat of the patrol car while he concluded his investigation. He gave absolutely no testimony regarding any statement made by appellant. The state then introduced two of the eye-witnesses, whose testimony was essentially the same as heretofore related, except that neither knew where appellant had secured the pistol.
The state introduced testimony from the Sheriff of Pike County who arrived at the scene shortly after the arrival of the two deputies. He testified the deceased was lying on the ground and he still had his right hand in the right pocket of his pants. He gave no indication that he talked with appellant. In addition to other witnesses, appellant gave personal testimony. It was *407 essentially as heretofore related, including definite testimony as to where she secured the pistol immediately prior to the shooting.
In rebuttal, the state called one witness, Deputy Sheriff Bruce Fairburn. He testified for the first time that he read appellant her constitutional rights when he placed her in the patrol car and that appellant then told him she wanted to tell everything to him. According to Fairburn, she then described the preliminary incidents which were essentially those hereinbefore set out. The significant part of Fairburn's testimony in rebuttal was that appellant told him she had the gun on her person under her shirt.
Appellant's attorney noticed that Deputy Fairburn was reading or refreshing his memory by some kind of writing. This developed to be a transcript of a tape recording. Upon being questioned about this, it was ascertained, and the state readily admitted, that the day or night before the trial, the district attorney talked with Deputy Fairburn and transcribed his statement. Although the statement was in the nature of a confession, the availability of the transcript was not made known to appellant's attorney nor was a copy given him. Appellant's attorney was not advised of this confession and/or statement given to Deputy Fairburn shortly after the incident occurred. The first appellant's attorney, or anyone interested in the appellant's defense, knew of the alleged statement by appellant, was when Deputy Fairburn was placed on the stand as a rebuttal witness and had given the testimony set out above. As hereinabove stated, no mention whatever of any statement by appellant was included in Deputy Fairburn's direct testimony introduced by the state.
Appellant's attorney, as an officer of the court, stated without contradiction that three or four nights prior to the trial, he had a conference with Deputy Fairburn, at which time all the deputy told him was that appellant said, "I shot him." Deputy Fairburn did not positively deny the in-court statement of appellant's attorney, only saying, "I don't think so, no, sir. I may have, but I don't recall."
Appellant's attorney moved the court to instruct the jury to disregard the rebuttal testimony of Deputy Fairburn regarding the statement of appellant or in the alternative, a mistrial. This was on a number of grounds, including the failure of the state to conform to discovery under Mississippi Uniform Criminal Rules of Circuit Court Practice, 4.06. Furthermore, the rebuttal testimony was in effect a confession to the officer that was reduced to a written instrument.
The lower court overruled appellant's motion, saying in part, that the securing of Fairburn's transcript regarding appellant's statement was the work product of the state's attorney and further that "[y]ou were entitled to, and did, apparently, talk to the witnesses and I do not know what you were told at the truck stop, but apparently, that wasn't under oath, and it wasn't at a time when the witness was under an oath... ." In other words, there was no serious contradiction of appellant's attorney's rebuff during his conference with Deputy Fairburn and it is rather surprising, to say the least, that the trial court would condone such proceedings because the Deputy "wasn't under oath."
In our opinion, the record on the first assignment of error indicates at least some form of what experienced trial attorneys call "sandbagging." Obviously the most important part of the entire trial was whether or not appellant secured the pistol out of the van and it remained in plain view or whether she was carrying it upon her person. There could be no more damaging testimony than that by Deputy Fairburn regarding this point, as the last evidence presented to the jury.
We find it was error for the court to deny appellant's motion to either instruct the jury to disregard the rebuttal testimony of Deputy Fairburn or to grant a mistrial.
Appellant contends that she was not allowed sufficient leeway in presenting evidence of prior actions of the deceased toward her. She offered records of Justice *408 Court Judges regarding convictions as a result of complaints made by her. These were excluded as being too far removed and remote in time. The court did allow testimony as to the reputation of the deceased for peace or violence and for carrying firearms. The witnesses were unanimous that his reputation was that of violence and he had a reputation for carrying firearms.
Under the undisputed evidence in this case, it is our opinion that much flexibility should have been given appellant in presenting prior harassments, threats and assaults directed toward her. Such evidence is material on the motives of both appellant and deceased in presenting the incidents that occurred in front of the store. The attitude, relationship and feelings of the accused and the deceased toward each other are material. Harley v. State, 345 So.2d 1048 (Miss. 1977); Rucker v. State, 248 Miss. 65, 158 So.2d 39 (1963); Clark v. State, 123 Miss. 147, 85 So. 188 (1920); Brown v. State, 88 Miss. 166, 40 So. 737 (1906); Guice v. State, 60 Miss. 714 (1883); and Josephine v. State, 39 Miss. 613 (1861).
This Court is hesitant to criticize and we hope that whenever this occurs, it is directed in a constructive manner. A thorough study of this cause indicates that we should reiterate what we have said on prior occasions; that is, an accused is not entitled to a perfect trial, but he is entitled to a fair trial. With all deference, we do not think that appellant received such and we are forced to reverse and remand the cause for another trial before another jury without the errors above discussed.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.