436 So.2d 1381 (1983)
Howard Leon MORRIS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 53847.
Supreme Court of Mississippi.
September 7, 1983.
*1383 W.S. Stuckey, Jr., Greenwood, for appellant.
Bill Allain, Atty. Gen. by Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, P.J., and DAN M. LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court.

I.
Howard Leon Morris, Defendant below and Appellant here, was convicted in the Circuit Court of Leflore County, Mississippi, of the crime of possession of more than one kilogram of marijuana and was sentenced to eight years imprisonment and fined $10,000. Understandably aggrieved, he appeals.
On the evening of his arrest, Morris was interviewed at length by law enforcement authorities. The interview was tape recorded. He substantially incriminated himself on this and other potential charges. Prior to trial defense counsel requested production of the statement pursuant to Rule 4.06(2) of the Uniform Criminal Rules of Circuit Court Practice. The State failed to produce the statement and subsequently, over objection of Defendant, a key state witness was allowed to testify in regard thereto. Because the State failed to comply with its obligation to produce the statement as required by Rule 4.06, we reverse and remand for a new trial.

II.
On the evening of August 27, 1981, Morris and one Johnny Bowen were riding in Bowen's pickup on the Old Humphreys Highway in Leflore County, Mississippi. Bowen was driving. Morris was a passenger on the right side of the vehicle.
At approximately 6:00 p.m., Leflore County Sheriff Ricky Banks observed the vehicle weaving across the white line. He ordered the vehicle to pull over and stop. Sheriff Banks approached the pickup on the driver's side. Bowen opened the door and got out. Through the open door, Sheriff Banks could see Morris on the passenger side with a grocery sack between his legs.
Sheriff Banks then walked around to the right side of the vehicle, and as he did so, Morris got out. Sheriff Banks testified that, as Morris got out, a plastic bag containing a green leafy substance fell out of the truck. According to Defendant Morris, the bag never fell out but remained on the seat. In any event, Banks seized the bag, recognized it as marijuana, and put it in his pocket. Banks then looked into the larger paper bag, which was open, and found that it contained a number of smaller plastic bags also filled with marijuana.
Banks placed Bowen and Morris under arrest. He then seized the grocery bag and, with the two men in custody, drove back to his office in Greenwood. There, the brown sack was weighed and found to contain approximately four pounds of marijuana.
Once in the custody of the sheriff in the Leflore County Jail, Morris was given the standard Miranda[1] warnings. He was *1384 questioned intermittently thereafter. Agents from the State Narcotics Bureau arrived and, together with Banks, they persistently besought Morris to tell them not only about the marijuana in question but also about other trafficking in illegal controlled substances.
At approximately 10:30 p.m. on the same evening, some four hours after the arrest, the interview which has given rise to the troublesome issue in this case began. Present were Agent Humphreys of the State Narcotics Bureau, Sheriff Banks, and Morris. The typed verbatim transcript of the tape recorded interview is some 29 pages in length. Questions put to Morris relating to the matter for which he was then under arrest appear on page 18 only. The rest of the interview consists of a far ranging interrogation about various illegal drug transactions the authorities thought Morris may have been involved in or may have knowledge of. Suffice it to say that the statement is substantially incriminating.
The transcribed interview was used by the State at trial in two ways. First, as a part of the State's case in chief Sheriff Banks testified. On cross-examination he sandbagged unknowing defense counsel. At the time counsel had no knowledge of the existence of a transcribed interview, much less its contents. Sheriff Banks, however, was very much aware of the statement. In a wholly unresponsive answer to an admittedly inept question, Banks blurted out in the presence of the jury that Morris had brought some 200 pounds of marijuana into the Greenwood area. This information appears on page 18 of the transcribed interview.
When the defense put on its case, the transcribed interview had still not been disclosed. Morris took the stand in his own defense. The State once again "sandbagged". Then in rebuttal the State recalled Sheriff Banks who produced the statement and proceeded to impeach Morris with it. This was the first knowledge the defense had of the existence of the statement. The defense made timely and proper objection which was overruled. Hence this appeal.

III.

A.
The dispositive issue on this appeal arises out of the non-disclosure of the typed verbatim transcript of the State's interrogation of Morris on the night of his arrest.
The case was called for trial on December 14, 1981. Approximately a week earlier Morris' attorney had an informal pretrial conference with the assistant district attorney in charge of the case. At this conference the State voluntarily produced "some lab reports" and "an arrest report". Defense counsel states that a request was made for production of any statements that Morris had given law enforcement officers.[2] The State's attorney responded at trial that she did not specifically recall the request but that if such a request was made, "I did not have any in that file for this particular case." Defense counsel at trial asked, "And I believe that in looking through your file you indicated that there was no statement that you had?". The State's attorney replied, "None that I knew of pertaining to this case; no, sir."
When the existence of the statement became known during the rebuttal testimony of Sheriff Banks, the State reiterated its position: It had the typed verbatim transcript of the August 27 interview but did not consider it to be related to this case.
To be sure, only one of the 29 typed pages appears to relate to the case at bar. In reviewing Rule 4.06, however, we find no language which would provide that a defendant can discover only those statements he gave which in the State's opinion are related to the particular case. We hold without the slightest doubt that the statement in question was discoverable under Rule 4.06.
*1385 That portion of Rule 4.06 which mandates the production of statements made by an accused, in whatever form preserved, has been authoritatively construed by this Court in Jackson v. State, 426 So.2d 405 (Miss. 1983). The facts in Jackson are similar to those presented here.
In Jackson, the defendant was convicted of murdering her former boyfriend. Her defense was self-defense. The trial court had allowed a deputy sheriff to testify to facts contained in an incriminating statement made by the defendant (a memorandum of which had been preserved). The statement had been given shortly after arrest. The only problem was that the written memorandum had not been furnished to the defense counsel when he had requested it. Defense counsel did not know of its existence until the damage had been done. He noticed that, while testifying in rebuttal, the deputy was refreshing his memory from papers he held in his hand. These papers turned out to include a memorandum reflecting details of the confession Jackson had made to the deputy. After finding out what the deputy was referring to, defense counsel moved that his rebuttal testimony be stricken from the record, or, in the alternative, that a mistrial be granted. His requests were denied.
On Jackson's appeal this Court held that the deputy's memorandum was, in effect, a discoverable statement within the meaning and contemplation of Rule 4.06. The Jackson Court characterized the failure to produce this statement for opposing counsel as follows:
"In our opinion, the record on the first assignment of error indicates at least some form of what experienced trial attorneys call "sandbagging". Obviously, the most important part of the entire trial was whether or not Appellant secured the pistol out of the van and it remained in plain view or whether she was carrying it upon her person. There could be no more damaging testimony than that by Deputy Fairburn regarding this point, as the last evidence presented to the jury.
We find it error for the Court to deny Appellant's motion to either instruct the jury to disregard the rebuttal testimony of Deputy Fairburn or to grant a mistrial." 426 So.2d at 407.
This Court reversed and Jackson's case was remanded for a new trial.
On the authority of Jackson, we hold that the State's failure to produce the statement, coupled with the State's use of the information contained in the statement both as a part of its case in chief and in rebuttal so infected the proceedings below that Morris' conviction must be vacated.

B.
We reverse here because the State was obliged to produce the statement but didn't, not because Morris was prejudiced. A review of the obvious prejudice in this case, however, makes clear the value of the rule and the importance of enforcement.
First, we find that defense counsel was literally "sandbagged" by Sheriff Banks via this statement. Compare Jackson v. State, 426 So.2d 405, 407 (Miss. 1983).
On the evening of August 27, 1981, Sheriff Banks was inquiring about the marijuana Morris had brought into the Leflore County area.
"Q. Well, how much did you bring back here to Walter? How much did you and Walter bring in here? This is not going against you, I'd just like to know how much you and Walter brought back in here. [Emphasis added].
A. 210 pounds. 87 and 123."
Having received assurances that the information would not be used against him, Morris thus told Sheriff Banks that he brought 210 pounds of marijuana into the area.
As the trial commenced, defense counsel was unaware of the transcribed statement and was certainly unaware of this particular question and answer found on page 18.
As a part of the State's case in chief, Sheriff Banks was called as a witness. On cross-examination defense counsel began pursuing the defense theory on the facts, *1386 that the bags of marijuana belonged to someone else and had been put in the truck by someone else. The following colloquy took place:
"Q. All right. Did Howard Morris not indicate to you that the sack was from Mr. Baker's house that he didn't know what was in it?
A. You don't want me to tell you what Howard indicated to me.
Q. Might as well; just get it all out.
A. Howard [Morris, the defendant] indicated to me that he came into town with two hundred pounds of marijuana.
There are, of course, many reasons why the answer was objectionable. It was wholly unresponsive to the question. It gave evidence of criminal activity for which Morris was not on trial. What is important for present purposes is that this was information Morris gave Sheriff Banks after having been assured by Banks that "this is not going against you". If defense counsel had had the statement, he would have known this. Suffice it to say that the prejudice to Morris here was enormous.[3]
There is yet another form of prejudice to which Morris was subjected by the failure of the State to produce the statement. The evidence reflects that in plea bargain negotiations Morris had been offered a three year sentence plus a substantial fine. The contents of this statement, if known, should have a major influence on defense counsel's evaluation of the proposed plea bargain. The statement is sufficiently incriminating that, had it been known, Defendant may well have accepted the plea bargain.
The point to be emphasized is that the Defendant is entitled to enter plea negotiations with all the cards on the table. He is entitled to the opportunity to evaluate his chances at trial with full knowledge of the contents of a statement such as that which we are here concerned. Rule 4.06 gives him this opportunity. The State had the statement. It is substantially incriminating. It should have been produced, but was not. One does not have to have tried many criminal cases to know that such was substantially prejudicial to the Defendant on the question of whether or not he would plea bargain.
Defendant is also entitled to know of the statement before he takes the witness stand. Here, of course, the statement was used by the State in rebuttal. Defendant could well have been subjected to severe cross-examination regarding its contents. Few today would dispute the notion that it is substantially unfair to the defendant for the State to withhold such a statement and allow defense counsel to place his client on the stand with no knowledge of the existence of the statement or its contents.

IV.
On this appeal the State has argued that the defense made no request under Rule 4.06 for production of the statement. We freely concede that the record on this point is less than crystal clear. Moreover, we do not have the assistance of the trial judge's finding of fact on the question of whether a request was made. Still the only reasonable interpretation of what occurred was that a request was made and that the assistant district attorney was of the impression that she only had to disclose statements related to this case.[4] Twenty-eight *1387 pages of the statement relate to other potential cases, and only one page concerns this case. The State did not consider the statement related to this case. That is why the statement was not produced.
We reiterate that nothing in Rule 4.06(2) limits its scope to statements made by the Defendant relating to the particular case. The rule requires the state to produce a "copy of any recorded statement of the defendants to any law enforcement officer". Morris was arrested at 6:55 p.m. on August 27, 1981. The transcribed statement is of an interview of Morris that began at 10:30 that same evening. Whether it described Morris' understanding of Einstein's theory of general relativity or his prediction as to whether the Yankees would win the pennant, any such statement was discoverable.
Our review of Rule 4.06[5] suggests that it is confusing and ambiguous in an important respect. Where the defendant proceeds informally and without court order, must his request be made in writing? At oral argument the State particularly requested that we answer this question. We do so in the affirmative.
We hold that, where no discovery order has been entered,[6] the request for discovery under Rule 4.06, to be enforceable, must be in writing. We emphasize our past holdings that a formal motion and court order are by no means necessary. The parties are free to proceed, indeed are encouraged to proceed, informally and without invoking the processes of the court (which, to be sure, are available in the event disputes should arise). A letter or other similar informal written format may be employed in making the request for discovery under the above rule.
We recognize that local practices have heretofore varied from county to county and from district to district. We recognize that there are indeed some areas of the state where criminal discovery matters are handled verbally. Certainly nothing said here is intended to discourage lawyers from proceeding on the basis of trust and confidence in each other's integrity. Nevertheless, to avoid the problems which have arisen in this case and of which we have been made aware in cases around the state, and in the absence of a discovery order, we hold that, in order to be enforceable under Rule *1388 4.06, the discovery request must be made in writing.
Again, because of our recognition that practices have varied from county to county and district to district, the construction we here give to the discovery rule shall be prospective only.

V.
Morris assigns as error the trial court's ruling admitting the marijuana into evidence. Defendant had made timely objection that the chain of custody had not been established. Because this question could well arise on retrial, we address it here.
The facts on this issue are as follows: Sheriff Banks testified that at the scene of the arrest he seized the small bag and the large bag. He put the small bag in his pocket and the large bag in his car and he took both of them to the Leflore County Sheriff's office in Greenwood. Once there, he put the small plastic bag into an evidence bag, placed his initials on it together with the date, and put it into his evidence safe and locked it. He testified that he was the only one with a key to that safe and that it was not removed from the safe before being transported to the Mississippi Crime Lab by Deputy Frank Davis.
Similarly, the large bag was stapled, taped, and Sheriff Banks put his initials and the date on the sack. This sack was also placed in the evidence cabinet and remained there until Davis carried it to the Crime Lab. The large paper bag contained 22 smaller plastic bags each of which contained marijuana.
The Sheriff's Deputy delivered the evidence to Mildred Brinson in the Mississippi Crime Lab. Myrtis Jean Smith was the technician at the lab who inspected, examined and tested the marijuana. Ms. Smith testified that she recognized the two bags as exhibits marked by Mildred Brinson after being received by her from Frank Davis. Those bags had been put in Ms. Smith's evidence locker where they remained until she performed her analysis. Ms. Smith testified that she weighed the substances, tested them, and then placed them in the evidence vault where they remained until the time of trial. The weight of the evidence weighed by Ms. Smith was 1389 grams, approximately a pound less than the evidence which had been weighed by Sheriff Banks in the Leflore County Sheriff's office earlier.
When faced with the sort of chain of custody objection made here, the trial court should inquire whether there is any indication or reasonable inference of probable tampering with the evidence or substitution of the evidence. Grady v. State, 274 So.2d 141, 143 (Miss. 1973). Matters regarding the chain of custody of evidence are largely left to the discretion of the trial judge and "unless this judicial discretion has been so abused as to be prejudicial to the Defendant, this Court will not reverse the ruling of the trial court". Wright v. State, 236 So.2d 408, 409 (Miss. 1970); Grady v. State, supra, 274 So.2d at 143; and Nix v. State, 276 So.2d 652, 653 (Miss. 1973).
In this case the only suggestion that the evidence may have been tampered with is the difference in weight of approximately one pound between the amount of substance weighed by Sheriff Banks and that weighed at the Crime Lab. It appears, however, that Sheriff Banks weighed the substances in the sacks, while at the Crime Lab the substance only was weighed. There is no evidence regarding the accuracy of the scales used by the sheriff.
In support of his argument that there has been a failure to establish chain of custody, Morris relies solely upon guesswork, speculation and conjecture. The substance of the credible evidence is that the substances and bags introduced at trial were the ones seized from Morris on August 27, 1981. The trial court was wholly correct in overruling defense objections on this point.

VI.
All other errors assigned are either invited, unpreserved by timely objection, or are sufficiently undeveloped in the record to permit intelligible consideration. In any event, we do not deem it necessary or appropriate to pass upon them.
*1389 For the reasons stated above, Defendant Morris' sentence is vacated, his conviction is reversed, and this case is remanded to the Circuit Court for a new trial. The Defendant, of course, now has the statement he was entitled to under Rule 4.06. We trust the case is therefore in a posture so that final disposition may be accomplished with dispatch.
REVERSED AND REMANDED FOR A NEW TRIAL.
PATTERSON, C.J., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.
WALKER and BROOM, P.JJ., specially concur.
WALKER, Presiding Justice, specially concurring:
I concur in the result reached but for a different reason.
The majority opinion holds that this case is being reversed because the state "was obliged to produce the statement [under Rule 4.06(2)] but didn't." I would not reverse for that reason alone but would reverse because the state failed to produce the statement pursuant to a request under Rule 4.06(2), and the appellant has demonstrated that he was prejudiced thereby. "The underlying question to be decided on review of discovery nondisclosure in criminal cases is whether any prejudice befell appellant as a result of the actions and rulings of the trial court." Turner v. State, 415 So.2d 689 (Miss. 1982). See also: Gallion v. State, 396 So.2d 621 (Miss. 1981); Lee v. State, 383 So.2d 821 (Miss. 1980); Johnson v. State, 346 So.2d 927 (Miss. 1977).
Prior to trial, defense counsel requested production of statements made by the defendant that were in possession of the state, pursuant to Rule 4.06(2) of the Uniform Criminal Rules of Circuit Court Practice. The state, through oversight, i.e., at the time the state answered the request for production, it was not aware that this particular statement was related to the charges in this case. This is understandable because only one page out of a twenty-nine page statement pertained to the charges in this case. However, the failure of the state to produce the statement, through oversight or otherwise, prejudiced the defendant as pointed out by the majority opinion where it is said:
We reverse here because the State was obliged to produce the statement but didn't, not because Morris was prejudiced. A review of the obvious prejudice in this case, ... makes clear the value of the rule and the importance of enforcement.
First, we find that defense counsel was literally "sandbagged" by Sheriff Banks via this statement. Compare Jackson v. State, 426 So.2d 405, 407 (Miss. 1983).
On the evening of August 27, 1981, Sheriff Banks was inquiring about the marijuana Morris had brought into the Leflore County area.
"Q. Well, how much did you bring back here to Walter? How much did you and Walter bring in here? This is not going against you, I'd just like to know how much you and Walter brought back in here. [Emphasis added].
A. 210 pounds. 87 and 123."
Having received assurances that the information would not be used against him, Morris thus told Sheriff Banks that he brought 210 pounds of marijuana into the area.
As the trial commenced, defense counsel was unaware of the transcribed statement and was certainly unaware of this particular question and answer found on page 18.
As a part of the State's case in chief, Sheriff Banks was called as a witness. On cross-examination defense counsel began pursuing the defense theory on the facts, that the bags of marijuana belonged to someone else and had been put in the truck by someone else. The following colloquy took place:
"Q. All right. Did Howard Morris not indicate to you that the sack was from Mr. Baker's house that he didn't know what was in it?
A. You don't want me to tell you what Howard indicated to me.

*1390 Q. Might as well; just get it all out.
A. Howard [Morris, the defendant] indicated to me that he came into town with two hundred pounds of marijuana."
There are, of course, many reasons why the answer was objectionable. It was wholly unresponsive to the question. It gave evidence of criminal activity for which Morris was not on trial. What is important for present purposes is that this was information Morris gave Sheriff Banks after having been assured by Banks that "this is not going against you". If defense counsel had had the statement, he would have known this. Suffice it to say that the prejudice to Morris here was enormous.
The appellant was prejudiced and he demonstrated that prejudice in his brief. For that reason I would reverse and remand for a new trial.
I do not subscribe to the theory that a defendant is entitled to production of evidence solely for the purpose of plea bargaining. That statement in the majority opinion is not supported by any authority. If we so hold, it will open the door to claims by prisoners on petitions for writ of error coram nobis, who heretofore entered pleas of guilty that their cases should be reopened because of the state's failure to fully disclose information in its possession to them and that if they had had such information they would have held out for a more favorable sentence. I fully agree that disclosure is required so that a defendant may prepare for trial of his case but I would not extend the rule further than that as a matter of right to include plea bargaining.
I also do not subscribe to the statement in the majority opinion that Rule 4.06(2) requires production of every statement made by a defendant, "Whether it described Morris' understanding of Einstein's theory of general relativity or his prediction as to whether the Yankees would win the pennant, any such statement was discoverable." In my opinion, the state is only required to produce statements and evidence that would have a bearing on the charges made against an accused in a particular case. Failure of the state to produce might well result in reversal if the Court, on appeal, was of the opinion that a statement was relevant and pertinent even though the prosecution had thought otherwise.
I have no doubt whatsoever what this Court would hold if the only alleged error on this appeal was that Morris was not supplied with a statement concerning his understanding of Einstein's theory of general relativity, if it were not pertinent to his defense or the charges made against him. I confidently predict we would affirm the conviction on the grounds that the defendant was not prejudiced.
BROOM, P.J., joins this specially concurring opinion.
NOTES
[1] See Miranda v. Arizona, 384 U.S. 436, 444-445, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706-707 (1966).
[2] Even in the absence of a formal motion for discovery, defense counsel is entitled to production of such statements under Rule 4.06.
[3] All of this raises a very serious question of voluntariness. Ordinarily the effect of Miranda warnings and an accompanying waiver of rights is wholly negated when law enforcement officers ask an incriminating question and, before the answer, promise the accused "this is not going against you".
[4] There is another reason for resolving any doubt about whether a request was made here in favor of Morris. Rule 4.06 may be ambiguous on the question of whether the six types of evidence enumerated in the rule must be disclosed automatically to each defendant or to his attorney, or whether a request must be made.

We are confident that English grammar teachers would unanimously conclude that the language "the prosecution shall disclose ..." at the outset of the rule makes disclosure of the existence of the statement mandatory and self-executing. The phrase "upon request" is placed in the sentence so that it refers to the defendant's right "to inspect, copy, test, and photograph", not the prosecution's duty to disclose. Grammatically, the first sentence of Rule 4.06 makes disclosure of the existence of the statement (or any of the other items listed in subsections (1) through (6) automatic, with the opportunity to inspect, copy, test and photograph available to the defendant only upon request.
Still we are confident that the rule has generally been understood to require either an order or a request. As we make clear below, where no discovery order has been entered, a defendant must make a written request before the prosecution becomes obligated to make discovery.
[5] The rule in pertinent part provides as follows:

The prosecution shall disclose to each defendant or to his attorney, and permit him to inspect, copy, test, and photograph upon request and without further order the following:
(1) Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial;
(2) Copy of any recorded statement of the defendants to any law enforcement officer;
(3) Copy of the criminal record of the defendant, if proposed to be used to impeach;
(4) Copy of crime lab reports or report or any tests made;
(5) Exhibit any physical evidence and photos to be offered in evidence; and
(6) Copy of any exculpatory material concerning defendant.
Subsections (3) through (6) were added to the rule by amendment effective October 26, 1982. Rule 4.06(2), which controls this case, has not been amended. What we say in this Section IV of this opinion applies to the amended Rule 4.06.
[6] We are aware from a review of the records in other cases of at least one circuit court district in which the circuit judges, at the beginning of each term, sua sponte enter blanket discovery orders applicable to all criminal cases. Such an approach dispenses with the necessity of either a formal motion or an informal request for discovery. It has the obvious effect of eliminating needless bickering about discovery matters. It provides for a more effective processing of a heavy criminal docket. It is certainly consistent with the spirit and scope of Rule 4.06.