533 So.2d 403 (1988)
John Wayne EDLIN
v.
STATE of Mississippi.
No. 57862.
Supreme Court of Mississippi.
August 31, 1988.
Rehearing Denied November 30, 1988.
Guy M. Walker, Laurel, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Deirdre D. McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and ZUCCARO, JJ.
SULLIVAN, Justice, for the Court:
John Wayne Edlin was tried, convicted and sentenced to life imprisonment for the murder of Thomas K. Robinson. Edlin perfects this appeal from the Circuit Court of Jones County and alleges the following as error:
*404 1. That the State seized the Defendant's car and obtained evidence therefrom without first obtaining warrant for the seizure of the car and without probable cause for the seizure of the car at a time when there were no extenuating circumstances. The evidence obtained therefrom should have been excluded;
2. The Court allowed the testimony of the break-up between the Defendant and Diane Sims into evidence when the same was too remote in time to be evidence of the present mental attitude of the Defendant or to be relevant and that such evidence was highly prejudicial;
3. The Court erred in restricting cross-examination of the State's witness, Mrs. Lovett, and excluding evidence of other boyfriends of Diane Sims, when the State's case and probable cause were based on the surviving witness's testimony that the driver of the vehicle that rammed the car was her ex-boyfriend;
4. The Court erred in restricting the cross-examination of the expert witness, Patricia Eddings;
5. The Court erred in denying the motion of defense counsel to exclude the trunk lid, being Exhibit 13, and the metal strip, being Exhibit 14, since no evidence connected the same in any way to the car of Mr. Edlin; and
6. The Court erred in excluding the testimony of the witness, Thomas Rogers about the same color of paint being applied to all General Motors cars.
The parties stipulated the testimony and evidence from a companion case, Edlin v. State, 523 So.2d 42 (Miss. 1988), and it was made a part of this record for appeal. Since the facts are in all important respects identical the reader's attention is directed to the prior opinion.

STATEMENT OF THE LAW

I.
THAT THE STATE SEIZED THE DEFENDANT'S CAR AND OBTAINED EVIDENCE THEREFROM WITHOUT FIRST OBTAINING A WARRANT FOR THE SEIZURE OF THE CAR AND WITHOUT PROBABLE CAUSE FOR THE SEIZURE OF THE CAR AT A TIME WHEN THERE WERE NO EXTENUATING CIRCUMSTANCES. THE EVIDENCE OBTAINED THEREFROM SHOULD HAVE BEEN EXCLUDED.
There is no merit to this assignment of error and the reader is directed to this Court's opinion in Edlin v. State, 523 So.2d 42 (Miss. 1988), where the same seizure was addressed and we found that the issuing judge had a substantial basis for concluding that probable cause existed. It existed there. It exists here.

II.
THE COURT ALLOWED THE TESTIMONY OF THE BREAK-UP BETWEEN THE DEFENDANT AND DIANE SIMS INTO EVIDENCE WHEN THE SAME WAS TOO REMOTE IN TIME TO BE EVIDENCE OF THE PRESENT MENTAL ATTITUDE OF THE DEFENDANT OR TO BE RELEVANT AND THAT SUCH EVIDENCE WAS HIGHLY PREJUDICIAL.
Here Edlin contests the admissibility of certain evidence offered to show that he and Sims had terminated their relationship on November 14, 1984. Edlin particularly challenges the evidence offered by the State to show that on that day he rammed a jeep he was driving into a car which Sims was driving and that he choked Sims. The prosecution contends that the evidence of Edlin's prior misdeeds was admissible under Rule 404(b) of the Mississippi Rules of Evidence to show motive. See Jackson v. State, 426 So.2d 405 (Miss. 1983). The prosecution further argues that federal courts have held similar evidence relevant. See United States v. Naranjo, 710 F.2d 1465, 1467 (10th Cir.1983); United States v. Tsinnijinnie, 601 F.2d 1035 (9th Cir.1979). Finally the prosecution argues that the question of remoteness is one for the sound discretion of the trial judge. See Naranjo, 710 F.2d 1465, 1468 (10th Cir.1983); May v. State, 524 So.2d 957, 965 (Miss. 1988).
There are numerous allegations of bad acts committed by Edlin. The prosecution's *405 first witness, Betty Stringer, testified as follows:
It was out at the Oyster Bar. He went over and grabbed her arm and they stopped and I was not close enough to hear anything that was said. All I can say is that she shook her head no a few times and she pulled her arm away from him and he had to be asked to leave by a couple of men that was there, I assume bouncers of the place.
MR. BUCKLEY:
I object to this, Your Honor. She is assuming, first of all, that 
MR. WALTERS:
 if the Court please, this statement that she made was made by another party in the presence of the defendant, which is admissible.
MR. BUCKLEY:
The problem is that she said she could not hear what was said.
MR. WALTERS:
That was as to what Diane said, as I understood.
THE COURT:
Overruled.
MR. WALTERS:
Q. Go ahead, Ms. Stringer.
A. And he was asked to leave by the bouncer or the men there.
Constable Burnette testified about Edlin's conduct on November 14, 1985, as follows:
Q. All right, sir. What, if anything, did the defendant do when you stopped him?
A. Well, when he got out he was a little steamed and he said, "I am going to kill that girl some day."
Q. And who was he referring to?
A. The subject that 
MR. BUCKLEY:
We object.
MR. WALKER:
We object.
MR. BUCKLEY:
That's a conclusion on the part of the witness, Your Honor, and is asking  unless he has some explanation by name or reference or pointing or indication or something, it is not admissible.
THE COURT:
Sustained.
MR. WINDHAM:
Q. What did you say the defendant said?
A. He said, "I am going to kill that girl  "
MR. BUCKLEY:
 we object. That's not responsive to the question, Your Honor.
THE COURT:
He asked  (breaking off)
Overruled.
MR. WINDHAM:
Q. All right. You can tell what he said.
A. He said, "I am going to kill that girl some day."
* * * * * *
MR. WINDHAM:
Q. Do you know who the defendant was referring to when he made that statement?
A. Yes, sir.
MR. BUCKLEY:
We object to that, Your Honor. That is still conclusion.
THE COURT:
Well, let me ask you, how do you know?
THE WITNESS:
The defendant was  previously he had caused a conflict at Northgate Apartments at this girl's apartment 
MR. BUCKLEY:
 Your Honor, that's prejudicial 
THE WITNESS:
 and the security guard called me 
MR. BUCKLEY:
 just a minute, Mr. Burnette.
Your Honor, I object to that. That's prejudicial in itself. He is testifying obviously to what somebody else said or told him.
THE COURT:
Sustained.
*406 Officer Harper testified about the alleged November 14, 1985, quarrel as follows:
They had got into a disagreement  some type of argument. She had left the apartment. He had left behind her to try to talk to her. She went out and got into a vehicle that she was driving, it was a 1971 Buick brown in color, and she had attempted to leave the complex at which time he got in his Jeep 
MR. WALKER:
 if the Court please, I object.
THE COURT:
What is the objection on?
MR. WALKER:
It is too remote in time.
THE COURT:
Overruled.
MR. WALKER:
Also, is this what she is saying or what he is saying. I don't understand that.
THE COURT:
Proceed.
MR. WINDHAM:
Q. Who was relating this to you?
A. Mr. Edlin.
Q. And what did Mr. Edlin say was his intentions whenever, I believe you said Ms. Sims had gotten into her car and attempted to leave?
A. He stated that he was trying to stop her and finish talking to her. He hadn't finished what he was going to say to her. She wouldn't stop and listen to him so he had taken his Jeep and in her attempting to leave the complex had ran into the vehicle that she was travelling in.
* * * * * *
A. Upon my arrival, I observed the vehicle sitting halfway in a parking space, the front end portion of the vehicle was sitting across the sidewalk up in the grass of the complex.
* * * * * *
Q. All right, sir, and would you tell the jury what you found when you arrived at Ms. Sims's apartment?
A. I found the door to the apartment ajar.
Q. What do you mean by ajar?
A. Well, the door facing was busted completely off of the frame 
MR. BUCKLEY:
 Your Honor, I object to that. That's not relevant to the issues in this case unless he can show some relationship between this defendant and that.
THE COURT:
Overruled.
MR. WINDHAM:
Q. You can continue.
A. Upon entering the apartment, Ms. Sims was there standing inside the apartment at the time I arrived.
Q. What did you observe of her condition?
A. Her condition?
Q. Yes, sir.
A. She was in a very emotional state of mind; she was crying, wringing her hands 
MR. BUCKLEY:
 Your Honor, that is hearsay and I object to it.
THE COURT:
What he saw and observed?
MR. BUCKLEY:
Yes, sir, about the  as to the conclusion what caused it, yes, sir.
THE COURT:
He hasn't said what caused it.
MR. BUCKLEY:
I realize that, but that's what the District  State's attorney is trying to imply. There is nothing to show what caused it.
THE COURT:
Overruled.
MR. WINDHAM:
* * * * * *
Q. What was her physical condition that you observed?
A. She was red in the eyes, she had what appeared to be redness around her neck and throat area
MR. BUCKLEY:
I object to that, Your Honor, again that is attempting to prove something *407 that cannot be shown to be relevant to this case unless he can show what caused it.
THE COURT:
Overruled. If there is no connection in it, I will instruct the jury to disregard it.
Rule 404(b), M.R.E., provides as follows: RULE 404. CHARACTER EVIDENCE NOT ADMISSIBLE TO PROVE CONDUCT; EXCEPTIONS; OTHER CRIMES
(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
One objection raised to the testimony concerning the alleged break-up of Edlin and Sims was remoteness. Recently, in May v. State, 524 So.2d 957 (Miss. 1988), this Court addressed a similar Rule 404(b) issue and stated:
The analysis under the new Rules of Evidence may incorporate our pre-Rules precedent to some extent. Rule 404(b) states that evidence of "other crimes, wrongs, or acts" will be admissible to show intent, knowledge, preparation, plan, identity, or absence of mistake or accident. If threats made to a deceased are considered "other crimes, wrongs, or acts," then the focus should be on whether the trial judge abused his discretion under Rule 403, M.R.E., in admitting the evidence despite its prejudicial effect. If the threats do not fall under 404(b), the analysis is still essentially the same, since threats made to the accused not constituting another wrong could still be relevant under Rules 401 and 402 as showing intent or motive. See Jenkins v. State, 507 So.2d 89, 91-93 (Miss. 1987). Here the question of remoteness may re-enter the analysis as a question of relevancy. However, Rule 401 defines relevant evidence very broadly, and it would seem that evidence of threats made in early 1984, some 10 months before the murder, would have a tendency to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable," especially in a circumstantial evidence case. The Court would thus again be faced with the question of whether the trial judge abused his discretion in admitting the testimony under Rule 403.
May, 524 So.2d at 965.
The prosecution is therefore correct that the question of the remoteness of Edlin's alleged bad deeds was one for the sound discretion of the trial judge. This, however, is not the end of the Rule 404(b) inquiry.
The difficulty of formulating a precise "test" for Rule 404(b) is addressed in Weinstein's Evidence, as follows:
Although all American jurisdictions agree that no evidence may be introduced which seeks solely to prove that the accused has a criminal disposition, the question of when evidence of a particular [bad] act may be admitted is so perplexing that the cases sometimes seem as numerous "as the sands of the sea," and often cannot be reconciled. In the discussion that follows any generalization should be regarded as suspect, for though it is easy to criticize any given case, it is impossible to verbalize a formula which can be applied with any precision. The factors in each case are so varied and unique, and the counter-thrusting pressures  constitutional and otherwise  so great, that in some instances the courts are thrown back to suggesting that the only requisite is that the decision accord with fundamental notions of fairness. Yet some aid to fairness is afforded by analyzing each proffer of other crime proof to determine what evidential hypotheses the jury is expected to use, and weighing the probative force of the line of proof against the need of the prosecutor and the risks specified in Rule 403. The more reason there is in the decision to admit or exclude, the more apt it is to be fair. (Footnotes omitted).
*408 2 Weinstein's Evidence, paragraph 404[08], pages 404-53 through 404-54 (1986).
Weinstein further explains the burden which must be borne by the proponent of Rule 404(b):
Rule 404(b) is a specialized rule of relevancy. Accordingly, as with any determination pursuant to Rule 401, counsel must be prepared to (1) identify the consequential fact to which the proffered evidence of other crimes, wrongs or acts is directed, (2) prove the other crimes, wrongs, or acts, and (3) articulate precisely the evidential hypothesis by which the consequential fact may be inferred from the proffered evidence. Evidence which passes muster up to this point must, in addition, satisfy the balancing test imposed by Rule 403 which requires the probative value of the other crimes evidence to outweigh the harmful consequences that might flow from its admission. (Footnotes omitted).
Id. at p. 404-58.
In this case the prosecution argues that the evidence was admissible to show Edlin's motive. The evidence of the Edlin-Sims breakup is admissible to show motive, if it were also shown that Edlin was jealous; the same cannot be said of Edlin's alleged acts of violence. For instance, evidence that Edlin had previously run a car which he was driving into a car which Sims was driving looks suspiciously like it is being used to show that Edlin later acted in conformity with his bad character. The salient issue is not what might the evidence have been used to show. The question is what was the evidence used to show. In Weinstein's words "what evidential hypothesis [was the jury expected to use?]"
Here the jury was clearly invited to infer that because Edlin had been violent on previous occasions, he might have committed the murder in question. During closing argument the prosecutor referred to this evidence and stated:
I will tell you one thing about it, we do know that he, on November 14th, ran his automobile  that is, the one he had, a Jeep  into his own automobile in which Diane Sims was in, with such force that it knocked it up on the sidewalk. Now, if you want to consider that a good relationship, or a bad relationship, it doesn't really matter to me.
That's the kind of man the defendant is over here, Mr. Edlin.
This statement runs afoul of Rule 404(b) which states, "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Rule 404(b), M.R.E.
The misuse of such evidence during closing argument is demonstrated in Professor Imwinkelried's thesis on Uncharged Misconduct Evidence as follows:
Even if the trial judge correctly admits the uncharged misconduct evidence and properly instructs the jury about the evidence, the prosecutor can inject error into the case during closing argument or summation... .
... [T]he prosecutor might invite the jury to misuse the evidence as evidence of bad character.... Did the prosecutor's language suggest that the prosecutor was really using an "it happened once, it could happen again" theory of logical relevance?
Imwinkelried, Uncharged Misconduct Evidence, § 9:68 at pp. 118-19 (1984).
Therefore, the evidence of the alleged Edlin-Sims breakup was properly admitted to show motive. Evidence which showed that Edlin followed Sims from bar to bar after the breakup might be used to show his motive-jealousy. In a case such as this the defendant's following of the victim might be admissible to show a scheme or plan, if the other necessary facts are present. However, the evidence that Edlin ran a car which he was driving into a car which Sims was driving on November 14, 1985, was improperly admitted. In the context presented here the evidence of that November 14, 1985, collision was improperly used under Rule 404(b) to show that Edlin acted in conformity with his prior alleged bad acts.
For this reason, this assignment of error has merit and the case must be reversed and remanded for a new trial.

*409 III.
THE COURT ERRED IN RESTRICTING CROSS-EXAMINATION OF THE STATE'S WITNESS, MRS. LOVETT, AND EXCLUDING EVIDENCE OF OTHER BOYFRIENDS OF DIANE SIMS, WHEN THE STATE'S CASE AND PROBABLE CAUSE WERE BASED ON THE SURVIVING WITNESS'S TESTIMONY THAT THE DRIVER OF THE VEHICLE THAT RAMMED THE CAR WAS HER EXBOYFRIEND.
Edlin argues that the trial judge improperly restricted his cross-examination of Carolyn Lovett. It is his contention that since the prosecution's case was primarily based on Sims' identification of her assailant as "an ole boyfriend," he should have been allowed to elicit from Lovett names of Sims' other "ole boyfriends." The prosecution directly states that the trial judge's ruling was proper since the evidence excluded was hearsay. See Rules 801(c) and 803, M.R.E.
Edlin is correct in arguing that wide latitude should be afforded defense counsel during cross-examination. See Pulliam v. State, 515 So.2d 945 (Miss. 1987); Black v. State, 506 So.2d 264 (Miss. 1987); Miskelley v. State, 480 So.2d 1104, 1112 (Miss. 1985). However, the prosecution is also correct in arguing that the operation of our hearsay rules is not suspended during cross-examination. During the cross-examination of this witness the following occurred:
Q. And you were subpoenaed by him [Larry Sims, Diane Sims' husband] to testify at the divorce hearing where he and Diane were divorced, weren't you?
A. No, sir, I wasn't subpoenaed.
Q. Did you appear?
A. Yes, sir. I did not testify. I was in the courthouse. I did not testify.
Q. But by Mr. Sims  you were to testify?
A. I did not testify.
Q. I understand, but you were requested. We spoke about it, yes. I had also spoken with Diane though.
A. And he had a list of boyfriends 
MR. WALTERS:
 if the court please, we are going to object to that.
THE COURT:
What is the basis for your objection?
MR. WALTERS:
It would be hearsay, as to what she would have to say about that.
THE COURT:
Sustained.
MR. BUCKLEY:
Q. Did you ever know the people that she talked to you about going with?

MR. WALTERS:

We object to that, if the Court please.
THE COURT:

Sustained. (Emphasis Added).
Edlin's reliance upon cases dealing with improperly restricted cross-examination is misplaced. Pulliam, Black, and Miskelley protect the important right of cross-examination by holding that any evidence which is material and relevant bearing on the motives, bias, and interest of a witness, and which effects the credibility of that witness is admissible. Miskelley, 480 So.2d at 1108. Doubts regarding the relevancy of the inquiry should be resolved in favor of permitting the examination. Pulliam, 515 So.2d at 947, Miskelley, 480 So.2d at 1108. Neither here nor at trial did Edlin show why the evidence should not be considered hearsay or why, if hearsay, it should have been admitted, under one of the numerous exceptions to the hearsay rule.
There is no merit to this assignment of error.

IV.
THE COURT ERRED IN RESTRICTING THE CROSS-EXAMINATION OF THE EXPERT WITNESS, PATRICIA EDDINGS.
Edlin offers no new authority but merely attempts to adopt the arguments set forth and addressed in Assignment No. III. The prosecution argues that Edlin has failed to point out (1) what he intended to show through the disallowed cross-examination of Eddings; and (2) how the court's action *410 prejudiced him. It is the duty of the appellant to overcome the presumption of the correctness of the trial court's judgment by demonstrating some reversible error. See Clark v. State, 503 So.2d 277 (Miss. 1987).
Edlin has not shown that the trial court erred or that the error, if any, prejudiced him. There is no merit to this assignment of error.

V.
THE COURT ERRED IN DENYING THE MOTION OF DEFENSE COUNSEL TO EXCLUDE THE TRUNK LID, BEING EXHIBIT 13, AND THE METAL STRIP, BEING EXHIBIT 14, SINCE NO EVIDENCE CONNECTED THE SAME IN ANY WAY TO THE CAR OF MR. EDLIN.
Under this assignment of error Edlin argues that the trial court erred in admitting into evidence the trunk lid and bumper strip taken from Robinson's Cutlass. In support of this argument Edlin would rely on Rules 401 and 402, M.R.E. Rule 401 provides as follows:
Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
Rule 401, M.R.E.
Rule 402 provides as follows:
All relevant evidence is admissible except as otherwise provided by the Constitution of the United States, the Constitution of the State of Mississippi, or by these rules. Evidence which is not relevant is not admissible.
Rule 402, M.R.E.
It was alleged that the trunk lid from the Cutlass "had two indenture marks which were made from a sharp object where it had hit the rear of his trunk." Also, it was alleged that the "plastic strip" which Officer Howard removed from the rear bumper of the Cutlass exhibited scuff marks.
Since 401 defines evidence very broadly, we submit that the trial judge committed no abuse of discretion in admitting this evidence. See May v. State, 524 So.2d 957, 965 (Miss. 1988). This assignment of error is without merit.

VI.
THE COURT ERRED IN EXCLUDING THE TESTIMONY OF THE WITNESS, THOMAS ROGERS, ABOUT THE SAME COLOR OF PAINT BEING APPLIED TO ALL GENERAL MOTORS CARS.
Mr. Rogers ran a paint and body shop in Laurel, Mississippi. Through Rogers, Edlin sought to show that all blue-green cars manufactured by General Motors in 1981 and 1982 were painted "jadestone green." The value of this testimony to Edlin is apparent. The prosecution concedes that this testimony should have been allowed, but argues that no reversible error occurred since a prosecution's witness put similar evidence before the jury. During cross-examination the prosecution witness Eddings stated the following:
Q. And you are aware that in the years 1981, 1982, and 1983 that General Motors used jadestone green paint on all of its models that were painted jadestone green?
A. I don't  the same batch?
Q. The same paint formula.
A. Formula. There are some variations from batch to batch, depending on the way they mixed it and things like that at the factory.
Q. But when they paint and use the jadestone green, they usually paint many thousands of cars with the same batch, don't they, run them through the same batch?

A. Yes, sir.

The prosecution argues that since Eddings testified that many thousands of cars were painted jadestone green the evidence sought to be elicited from Rogers was merely cumulative and properly disallowed under Rule 403, M.R.E.
Rule 403 provides as follows:
Although relevant, evidence may be excluded if its probative value is substantially *411 outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Rule 403, M.R.E.
However, the evidence offered by Edlin through Thomas Rogers should have been admitted by the trial judge. The record reflects that the trial judge made no finding that the evidence was cumulative but instead ruled that the evidence had not "been qualified properly to be of any benefit to the jury." The prosecution readily concedes that the evidence was competent and relevant. The evidence was not in fact cumulative because Eddings had not testified that "jadestone green" paint might be found not only on Oldsmobiles but on Chevrolets, Buicks, Pontiacs, and Cadillacs. There is merit to this assignment of error in that the trial judge erroneously excluded the testimony of Mr. Rogers.
For the errors contained herein this cause must be reversed and remanded for a new trial.
Edlin filed pro se a motion with this Court on which ruling was reserved until our ruling on the appeal. In that motion Edlin argues that the record in this case is incomplete and inaccurate. Edlin also argues that his attorney failed to pursue what Edlin believes was a discovery violation. Edlin finally contends that he was not present at the motion for new trial nor was the attorney who filed the motion, Travis Buckley.
Based on these allegations Edlin argues that he should be allowed an evidentiary hearing to show that two discovery orders were placed in the wrong record and to demonstrate prejudice to his defense by their omission. Edlin has also filed a motion to dismiss his attorney of record with this Court. In this motion Edlin argues that Attorney Guy M. Walker, who successfully represented Edlin on a charge of the murder of Diane Sims, withdrew from that case when it was remanded to the trial court because of conflict of interest. Walker himself alleged that this conflict of interest would prevent him from representing Edlin further. Because of this conflict Edlin now wishes to have Walker dismissed as counsel for purposes of appeal. Additionally, Edlin filed a motion for leave to file pro se supplemental assignment of errors and briefs in which he alleges certain deficiencies on Attorney Walker's part during the appeal of the companion case, and offers his own supplemental brief in the present case. Also, included is an affidavit from Edlin which states that he understands the nature of his proposed undertaking and waives his right to counsel on this appeal and also his right to oral argument. Edlin does not indicate that he wishes to have the briefs filed on his behalf by Attorney Walker withdrawn.
Because Edlin's Attorney Walker has, in the companion case, alleged a conflict of interest, this raises certain Sixth Amendment issues. The Sixth Amendment right to counsel undoubtedly includes right to counsel who is free from an actual conflict of interest. Bridges v. United States, 794 F.2d 1189, 1192 (7th Cir.1986), citing Strickland v. Washington, 466 U.S. 668, 684-686, 104 S.Ct. 2052, 2062-64, 80 L.Ed.2d 674 (1984); United States v. Cronic, 466 U.S. 648, 653-57, 104 S.Ct. 2039, 2043-46, 80 L.Ed.2d 657 (1984); Cuyler v. Sullivan, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). This right to conflict-free counsel encompasses all stages of a criminal proceeding. Bridges, supra, citing Holloway v. Arkansas, 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978).
While Edlin's request may have merit, without an evidentiary hearing it would be difficult to determine if he fully understands important rights which he is waiving. In his attempt to file a supplemental brief, Edlin demonstrates that he is either ignorant of or unwilling to obey this Court's rules of procedure.
No request to withdraw has been filed by Edlin's attorney in the instant case. Edlin's motion to proceed pro se should therefore be denied. Edlin's motion to file a supplemental brief is overruled.
*412 CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT ARE HEREBY REVERSED AND THIS CAUSE IS REMANDED FOR A NEW TRIAL. MOTION TO PROCEED PRO SE OVERRULED. MOTION TO FILE SUPPLEMENTAL BRIEF OVERRULED.
HAWKINS, and DAN M. LEE, P.JJ., and PRATHER and ZUCCARO, JJ., concur.
ROY NOBLE LEE, C.J., ROBERTSON and GRIFFIN, JJ., concur in part and dissent in part.
ANDERSON, J., dissents.
ROBERTSON, Justice, concurring in part, dissenting in part:
I applaud much of what appears in Part II of the majority opinion regarding admissibility of testimony of the breakup between John Wayne Edlin and Diane Sims. May v. State, 524 So.2d 957, 965 (Miss. 1988) states good law, as does Weinstein's Evidence treatise from which the Court quotes liberally and appropriately. My concern is in significant part that the Court misapplies that law to the facts of this case.
The evidence that Edlin ran his car into one driven by Sims is sufficiently intertwined with evidence generally of the Edlin-Sims breakup that the two ought to be treated the same; that is, either both are admissible or both are inadmissible. In my view both are admissible on the issue of motive. See Rule 404(b), Miss.R.Ev. Edlin's remedy at this point was an instruction to the jury cautioning that consideration of the evidence should be limited to the question of motive. Beyond that, at the point of final argument, Edlin's remedy was an objection on grounds that the prosecution was going beyond the scope of the cautionary instruction. Apparently no objection was made. If one had been made, it ought to have been sustained. Herein lies the correct meaning of the quotation from Imwinkelried's Uncharged Misconduct Evidence, Section 9:68 at pp. 1118-19 (1984), cited at page 12 of the opinion of the Court. The prosecutor may well inject error into the case during closing argument by urging the jury to consider the uncharged misconduct evidence for purposes other than those for which it was admitted. Again, if evidence is received for a limited purpose, e.g., motive, it is incumbent upon the defense to object when in closing argument the limitation is exceeded.
Otherwise, an appellate court ought not use final argument to decide a question of admissibility of evidence. The trial judge has to make his ruling on the evidentiary point at the time the question arises. If his ruling is in error, what is said in closing argument, of course, may go to whether an error is reversible or harmless. But the question of whether it is error to admit the evidence is not affected by what is said in argument. Again, Edlin's remedy when the prosecuting attorney made his "that's the kind of man the defendant is" argument was an objection. None appears in the record.
I would affirm, as on all other issues I join in the opinion of the Court.
ROY NOBLE LEE, C.J., and GRIFFIN, J., join this opinion.
ANDERSON, Justice, dissenting:
I respectfully dissent.
I agree with the majority that it was error to admit into evidence that Edlin drove his automobile into that of Sims. However, I feel this in no way should constitute reversible error. Such an infraction as this is harmless error, especially where defendant's guilt is so overwhelming.
Edlin was justly convicted and I would affirm his conviction.