659 So.2d 591 (1995)
Eric Lane GLASKOX
v.
STATE of Mississippi.
No. 91-KA-01268-SCT.
Supreme Court of Mississippi.
August 3, 1995.
*592 Brian B. Britt, Ocean Springs, for appellant.
Michael C. Moore, Atty. Gen., Jackson, Pat S. Flynn, Asst. Atty. Gen., Jackson, for appellee.
En Banc.
SMITH, Justice, for the Court:
Eric Lane Glaskox (Glaskox) appeals to this Court the judgment of the Circuit Court of Jackson County resulting in his conviction of gratification of lust involving his six year old daughter and sentence to ten years in the custody of the Department of Corrections. Glaskox's appeal alleges sixteen assignments of error, fifteen of which are totally without merit and one which requires discussion. After thoroughly considering these issues, we find they are without merit and we must affirm the trial court.

FACTS
D.G., wife of the defendant testified that she returned home from her job at Hardee's at approximately 1:00 a.m. on January 15, 1989, and found her husband, Glaskox, in bed with their six year old daughter, A.G.. Both Glaskox and A.G. were naked and A.G. was underneath Glaskox with his penis lying across her leg. D.G. noticed that A.G. was covered with a greasy substance and her vaginal area was red. Glaskox was asleep or passed out. A.G. started crying when D.G. picked her up, and stated that her daddy had hurt her. When D.G. woke Glaskox to ascertain what was occurring he replied "nothing" and promptly went back to sleep. A.G. testified that Glaskox had touched her in her vaginal area, rubbed himself on her and put Crisco on her as she pointed to her vaginal area.
Diane Spence, an emergency room nurse who examined A.G., testified that the child was bruised in the vaginal area and had an oily substance on her vaginal area. Spence took a medical history from A.G. She testified that A.G. said her father had touched her with his hand and with "the hard thing" and had kissed her "down there."
Dr. Richard Bucci, the emergency room physician, testified that A.G.'s genital area was severely hemorrhaged and bruised, caused by bleeding under the skin all around the vulva and vaginal area. Dr. Bucci stated that there was "much trauma" to the child's vaginal area. Detailed photographs were admitted into evidence depicting the severity of the injuries sustained by the child. Although Glaskox suggested the redness to the child's vagina was the result of bedwetting, Spence and Dr. Bucci completely refuted this allegation. Additionally, Dr. Bucci, qualified as an expert in the field of sexual abuse, testified:
This is trauma. This is injury. This is a bruising from a friction, from just severe trauma to this tissue. Any of the other conditions mentioned produce a kind of  a more of an irritation of the skin. A diaper rash has to be long standing for it to produce any kind of actual breakdown of the skin. There can be some local irritation where a little pink, maybe a pink rash might appear, but any of the conditions mentioned would not produce this severe redness. It's a redness from blood. Its not a redness from irritation. Blood is from the trauma. The blood vessels and the microcapillaries were broken actually from the severe trauma caused to this soft tissue that actually bleeds profusely under the skin, giving that bright red color. This is not a rash by any means and it is so localized to the vaginal area, again, one would expect a diaper rash to be diffused or underwear problem to the outlying of the area. This child was spotless other than the oil and the injury to her. The rest of her body really showed no signs of any kind of illness. (emphasis added).
Glaskox testified that D.G.'s uncle, James Pitts, was also at their home on the night in question. Glaskox had put the children in their own beds at 8:30 p.m. Glaskox testified that he went to bed that night and didn't remember anything else until he awakened to D.G. hitting him. He stated that A.G. had looked as red as the pictures introduced in evidence from rashes that she had on prior occasions. However, on cross-examination, Glaskox's statement that he gave to police at his arrest was introduced into evidence. *593 Glaskox's statement revealed that he had remembered A.G. getting into bed with him and "scooting up" to him. Glaskox further claimed in the statement that "I can think I had been dreaming or something."
Glaskox called D.G. as an adverse witness, but was denied the opportunity to impeach her with time cards and payroll records from Hardee's. Glaskox intended to attack her credibility by using the records to rebut D.G.'s statement that she had worked from 4:00 p.m. to 11:00 p.m. on the night in question.

DISCUSSION OF LAW

WHETHER THE DOCUMENTARY EVIDENCE WAS PROPERLY EXCLUDED DUE TO GLASKOX'S FAILURE TO COMPLY WITH THE DISCOVERY RULE.
The trial judge held that Glaskox had made no attempt to comply with reciprocal discovery and the evidence concerning the time cards was excluded. During the State's case in chief, D.G. was asked what time she left work at Hardee's on the night in question. She responded that she left at 11:00 p.m., and that was not challenged on cross-examination. Defense counsel did not offer the time card into evidence during cross-examination. Instead, during Glaskox's case in chief, D.G. was called as an adverse witness and the attempted impeachment by use of the time card records occurred. The State objected on discovery violation grounds. Glaskox claimed that he was not required to reveal evidence offered in direct rebuttal. Glaskox had the time records subpoenaed for some time prior to trial to use as surprise rebuttal. This is exactly the type of tactics which the discovery rule was specifically created to prevent.
Rule 4.06, Uniform Criminal Rules of Circuit Court Practice, controls discovery between both parties in criminal cases and is just as binding on one as the other. Coates v. State, 495 So.2d 464 (Miss. 1986); Darghty v. State, 530 So.2d 27 (Miss. 1988).
This Court has held that evidence offered in rebuttal is subject to the discovery rule. In Johnson v. State, 491 So.2d 834 (Miss. 1986), this Court stated:
Under our holding in Jackson v. State, 426 So.2d 405 (Miss. 1983); and Morris v. State, 436 So.2d 1381 (Miss. 1983), there is no distinction in an incriminating statement being offered by the state's case in chief, or reserving it for rebuttal, the accused is nevertheless entitled to discovery so as not to be caught by surprise at trial... .
Johnson, 491 So.2d at 837.
This Court has set out the procedure for trial courts to follow when a discovery violation has occurred. Commencing with Box v. State, 437 So.2d 19 (Miss. 1983), this Court has held that trial courts should before trial or during trial, upon objection by a party, give that party a reasonable opportunity to interview witnesses or inspect the evidence. After such opportunity, if the party believes it may be prejudiced by lack of opportunity to prepare, it must request a continuance. Failure to so request constitutes acquiescence in proceeding with the trial as if no violation of discovery occurred. However, if the discovery violator is not willing to proceed without the evidence, the circuit court must grant the continuance. Houston v. State, 531 So.2d 598, 611-12 (Miss. 1988); See also Alexander v. State, 610 So.2d 320 (Miss. 1992); Cole v. State, 525 So.2d 365 (Miss. 1987).
Based on this precedent, Glaskox violated discovery by his failure to produce for the State copies of the time cards and payroll records from Hardee's after they had been subpoenaed and in his possession. The trial court did not follow Box and its progeny. Instead, the trial judge sustained the State's objection, disallowed the evidence, allowed the defense counsel to make an offer of proof, and proceeded with trial.
The trial court clearly applied Rule 4.06(j), which reads as follows:
In the event of wilful violations of obligations imposed by this rule or any discovery request or order issued thereto, the court may impose upon a party or counsel, or both, such sanctions as may be appropriate.
*594 The factual scenario in the case sub judice is exactly the type situation that the United States Supreme Court had in mind in Taylor v. Illinois, 484 U.S. 400, 415, 108 S.Ct. 646, 655, 98 L.Ed.2d 798, 814 (1988), where the denial of admission of evidence as a sanction was approved where the defendant's discovery violation was "willful and motivated by a desire to obtain a tactical advantage." The Supreme Court further stated:
It may well be true that alternative sanctions are adequate and appropriate in most cases, but it is equally clear that they would be less effective than the preclusion sanction and that there are instances in which they would perpetuate rather than limit the prejudice to the State and harm to the adversary process. One of the purposes of the discovery rule itself is to minimize the risk that fabricated testimony will be believed. Defendants who are willing to fabricate a defense may also be willing to fabricate excuses for failing to comply with a discovery requirement.
Taylor, 484 U.S. at 413, 108 S.Ct. at 655.
In Houston v. State, 531 So.2d 598 (Miss. 1988), this Court stated:
Generally, it ought to be reserved for cases in which the defendant participates significantly in some deliberate, cynical scheme to gain a substantial tactical advantage.
Id. at 410, 108 S.Ct. at 654.
Returning to the case at bar, Glaskox failed to cross-examine D.G. on this issue during cross-examination in the State's case in chief, but rather called her adversely in his case. Glaskox's counsel deliberately withheld from the State the time cards and payroll records subpoenaed for several months prior to trial and in his possession as a planned "surprise on rebuttal." This was clearly a deliberate scheme to gain a substantial tactical advantage. The Taylor rational must be applied to the case sub judice. The time card and payroll records were properly disallowed on procedural grounds and for lack of relevancy.
In Mallett v. State, 606 So.2d 1092 (Miss. 1992), where Mallett was charged with murder and wanted to introduce evidence of a forensic chemist that the deceased was drunk at the time of the shooting, this Court stated, "Burnley may have been a boozer of the worst kind, but that does not mitigate the severity of Mallett's felonious conduct." Id. at 1095. The issue in the case at bar is also not relevant as it represents a collateral matter. As in Burnley's scenario in Mallett, whether or not D.G. left work when she claimed cannot "mitigate" Glaskox's gratification of lust committed against his six year old daughter. Glaskox claims the evidence was relevant to show motive: that D.G. prompted A.G. to fabricate this entire story to enable D.G. to obtain a divorce. However, Glaskox failed to offer any evidence to support such a bald allegation. The time card and payroll records would not have added to this groundless speculation by Glaskox. This issue is without merit.

CONCLUSION
The trial court properly applied Rule 4.06(j), Uniform Criminal Rules of Circuit Court Practice, in disallowing Glaskox's use of the time cards to impeach D.G.'s testimony. There was a clear violation of discovery by Glaskox. Glaskox's counsel intended all along as trial strategy, to obtain a tactical advantage over the prosecution by failure to disclose the time cards and use them in rebuttal only. The United States Supreme Court decision of Taylor applies to this case, as does our cases of Johnson v. State, Jackson v. State, Morris v. State and Mallett v. State. There is no merit to Glaskox's claims. We must affirm Glaskox's conviction and sentence for the sexual abuse of his young six year old daughter.

CONVICTION OF FONDLING AND SENTENCE OF TEN YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.
HAWKINS, C.J., PRATHER, P.J., and PITTMAN and JAMES L. ROBERTS, Jr., JJ., concur.
BANKS, J., concurs in result only.
SULLIVAN, J., dissents with separate written opinion joined by DAN M. LEE, P.J., and McRAE, J.
*595 SULLIVAN, Justice, dissenting:
The trial court committed reversible error when it prohibited the defense from introducing documentary evidence for the purpose of impeaching an adverse witness. For this reason I must respectfully dissent.
The defendant's wife, D.G., was working at Hardee's on the night of the alleged fondling. Glaskox was home with his daughters. D.G. went to a friend's house immediately after work. She testified that she found Glaskox and the child naked in bed together when she returned home at approximately 12:45 a.m.
Glaskox called his wife in his case-in-chief but was denied the opportunity to impeach her with the employer's payroll records and time cards. He argued at trial that he had subpoenaed the records through D.G.'s employer and intended to use them to rebut D.G.'s statement that she worked from 4:00 p.m. to 11:00 p.m. on the night in question  i.e., to attack her credibility.
When the prosecutor first objected to the time card, defense counsel stated "It is offered in direct rebuttal, your Honor, and I don't think I have to produce ," to which the state responded: "Yes, there is a case directly on point that says you have got to introduce rebuttal. And it [sic] had it available on direct is when he had it available. He has had this for months and he has never shown it to me. I have no idea what it purports to be, but I know that it would require some analysis and a rebuttal witness to you (sic) clear up any inconsistency that he may think exists." The court ultimately sustained the prosecutor's objection to the use of the time card to impeach D.G.'s statement that she worked until 11:00 p.m. on the night in question. The defense then made his proffer by questioning D.G. outside the presence of the jury. At the conclusion of the proffer of proof, the prosecutor argued that "this is just a perfect example of how we could clear this up given the amount of time required to go get the witnesses. This is ridiculous. That's why they have the rules."
In Johnson v. State, 491 So.2d 834, 837 (Miss. 1986), this Court stated:
Under our holding in Jackson v. State, 426 So.2d 405 (Miss. 1983); and Morris v. State, 436 So.2d 1381 (Miss. 1983), there is no distinction in an incriminating statement being offered by the state's case in chief, or reserving it for rebuttal, the accused is nevertheless entitled to discovery so as not to be caught by surprise at trial ...
The State is entitled to the same because discovery rule 4.06 binds the defendant and prosecution equally. Darghty v. State, 530 So.2d 27, 30-31 (Miss. 1988); Coates v. State, 495 So.2d 464, 467 (Miss. 1986). The defendant is responsible for producing "any physical evidence and photographs which may be offered in evidence[.]" Miss.Unif.Crim. R.Cir.Ct.Prac. 4.06(c)(2).
On several occasions, we have stated the appropriate trial court procedure for handling a discovery violation. Beginning with Box v. State, 437 So.2d 19 (Miss. 1983), we said:
The essence of that procedure is that, where faced with a discovery violation, technical or otherwise, in a criminal proceeding, the Circuit Court should  pre-trial or during trial
(1) Upon objection by a party, give that party a reasonable opportunity to become familiar with the undisclosed evidence by interviewing the witnesses, inspecting the physical evidence, etc.
(2) If, after this opportunity for familiarization, the objecting party believes that it may be prejudiced by lack of opportunity to prepare to meet the evidence, it must request a continuance. Failure to do so constitutes an acquiescence that the trial may commence or proceed and that the discovery rule violator may use the evidence as though there had been no discovery violation.
(3) If the objecting party requests a continuance, the discovery violator may choose to proceed with trial and forego using the undisclosed evidence. If the discovery violator is not willing to proceed without the evidence, the Circuit Court must grant the requested continuance.
Houston v. State, 531 So.2d 598 at 611-12 (Miss. 1988); see also Alexander v. State, 610 So.2d 320 (Miss. 1992); Darghty v. State, 530 *596 So.2d 27 (Miss. 1988); Cole v. State, 525 So.2d 365 (1987).
Based on this authority, Glaskox clearly violated discovery when he failed to give the State copies of the payroll records after they had been subpoenaed. It is equally clear that the trial court did not follow the guidelines of Box and its progeny. Here, instead of allowing the State to review the payroll records to determine whether it needed a continuance to prepare to counteract the surprise evidence, the court sustained the state's objection, allowed defense counsel to make an offer of proof, and proceeded with trial. The result was that the defense was precluded from getting this impeachment evidence before the jury. This documentary evidence revealed a defect in the testimony of the State's key witness. Certainly her inability to accurately remember, or her deliberate falsification of the events of that evening was relevant to the task of appraising the credibility of the State's case.
The prosecution relies on Taylor v. Illinois, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), for the proposition that the trial judge may properly impose a sanction against the defendant excluding the evidence where the defendant's discovery violation was "willful and motivated by a desire to obtain a tactical advantage... ." Id. at 415, 108 S.Ct. at 656. However, the Taylor Court recognized that exclusion of all the evidence is certainly not always the appropriate sanction against a defendant who has committed a discovery violation.
Prejudice to the prosecution could be minimized by granting a continuance or a mistrial to provide time for further investigation; moreover, further violations can be deterred by disciplinary sanctions against the defendant or defense counsel. Id. at 413, 108 S.Ct. at 655. This Court warned trial courts against imposing the preclusion sanction in Houston v. State, stating:
Generally, it ought to be reserved for cases in which the defendant participates significantly in some deliberate, cynical scheme to gain a substantial tactical advantage. See Taylor v. Illinois, 484 U.S. 400, 414-15, 108 S.Ct. 646, 655, 98 L.Ed.2d 798, 814 (1988).
Houston, 531 So.2d at 612. There is simply no finding on the record that the defendant withheld this documentary evidence in a deliberate attempt to gain a substantial tactical advantage.
The conviction of gratification of lust and sentence of ten years in the Mississippi Department of Corrections should be reversed and the case remanded to the Circuit Court of Jackson County, Mississippi.
DAN M. LEE, P.J., and McRAE, J., join this opinion.