HINKEBEIN, Judge,
for the Court:
¶ 1. Albert Mims was originally charged in the Circuit Court of the Second Judicial District of Jones County with drive-by shooting pursuant to Miss.Code Ann. § 97-3-109 (Rev.1994). After being convicted of the lesser-included-offense aggravated assault, Mims was sentenced to serve a term of twelve years in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction, Mims appeals to this Court on the following grounds:
I. THE COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT THE APPELLANT’S MOTION FOR A MISTRIAL AT THE PRETRIAL HEARING CONCERNING THE TESTIMONY OF JAMETRA JONES.
II. THE EVIDENCE IS INSUFFICIENT TO SUPPORT THE VERDICT OF GUILTY. Finding merit in Mims’s first assignment of error, we reverse and remand the judgment of the circuit court.
*78 FACTS
¶2. In early 1996, Mims’s sistei’, Shekey Evans, and another woman, Cheryl Carmichael, were involved in an on-going quarrel over the affections of a man. The details of their frequent altercations are unimportant for present purposes. Suffice it to say, however, that Mims himself foolishly became involved in the conflict on the morning of March 4, when he traveled to Carmichael’s home with Evans, their mother, and Evans’s two children. According to the trial testimony of Carmichael and her own daughters, fourteen-year-old Jacquana and eight-year-old Eartha, as the group’s vehicle paused in front of their house, Mims fired one gunshot into the air while still seated inside and another two toward the dwelling after briefly exiting the car. Based on this testimony as well as the recollection of Mims’s then-girlfriend that he subsequently admitted having committed the offense, he was ultimately convicted of aggravated assault. It is from the jury’s guilty verdict that he appeals to this Court.
ANALYSIS
I. THE COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT THE APPELLANT’S MOTION FOR A MISTRIAL AT THE PRETRIAL HEARING CONCERNING THE TESTIMONY OF JAMETRA JONES.
¶ 3. Only moments before his Monday morning trial, Mims was notified of the prosecution’s plans to call his former girlfriend, Jametra Jones, as a -witness against him. His attorney promptly asked that her testimony be excluded in its entirety, arguing that he had not been previously apprised of any such witness via discovery. In response, the State excused its failure to do so, contending that the possibility that she had knowledge of certain relevant facts had only come to light over the previous weekend. The district attorney then explained that in fact no one from her office had yet spoken to Jones either. From the ensuing conversation it appears that several months earlier Mims admitted to Jones that he had fired a weapon during the incident at Carmichael’s home. Jones, after their tumultuous break up and in anticipation of the upcoming trial, repeated these remarks to Carmichael. However, Carmichael never mentioned this to the authorities until three days prior to trial. At that point, rather than personally tracking down Jones and/or alerting the defense, the prosecution, with the intention of interviewing her immediately before the planned proceedings, simply encouraged Carmichael to bring the young woman along on Monday. Upon her arrival at the courthouse, Jones was served with a subpoena. Unimpressed with the State’s justification, the trial judge echoed defense protests, chastising the prosecutor as follows:
If you people ever do me this way again, I’m going to hold you all in contempt of Court or constructive contempt of court and ask the Supreme Court to come down here see if they can’t straighten this out. If you find out someone is going to be a witness and you intend to use them in a trial of the case that I am going to preside over, you will immediately issue a subpoena for them and notify the other side that these people are available as a witness, or they are going to be a witness. And you don’t bring them up here and then the minute they get here hand them a subpoena. That is the most blatant violation of the rules that I know of.
Thereafter, the prosecution and defense were allowed to conduct brief interviews with Jones in the hall outside the courtroom. However, the trial court went on to overrule Mims’s subsequent request for a mistrial, stating:
[TJhe only thing I can do about it is take and consider sanctions against these people and give you an opportunity to talk to this lady about why she was not disclosed in accordance with the Rules of Circuit Court.
¶ 4. On appeal, defense counsel now characterizes the trial court’s handling of the situation as reversible error. He claims that the judge’s harsh words, while appropriate, did little to protect his client from the prejudice caused by Jones’s essentially unchallenged testimony. In that vein, he contends that the judge should have ordered the case *79 to be continued so that he might prepare for the witness. In response, the State contends that any mistakes were, at most, harmless because “[t]he only way to counter testimony of this kind is by exposing bias, prejudice, motivation to fabricate, inaccuracies of observation, and so on, either through cross-examination or through rebuttal evidence....” Because Mims, via their previous relationship, was familiar with Jones, the State suggests that he could have assisted his attorney in preparing an effective cross-examination. To that end, the State writes in its brief before this Court, “there is no basis for finding that disclosure of Jones’s proposed testimony a week or a month or three months prior to trial would have made any difference whatsoever....” Because this justification, aside from its questionable accuracy, disregards the principles upon which the rule is based, we must reverse the trial court’s decision to proceed with the trial and remand for further proceedings.
¶ 5. Our legal context is provided by Rule 9.04(A)(2) of the Uniform Rules of Circuit and County Court, which reads in pertinent part as follows:
A. [T]he prosecution must disclose to each defendant or to defendant’s attorney ... the following which is in the possession, custody, or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecution:
(1) Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial ...;
(2) Copy of any written or recorded statement of the defendant and the substance of any oral statement of the defendant;
URCCC 9.04(A)(1), (2). As should be immediately clear, Mims’s remarks fall squarely within this mandate. Furthermore, as his statement to Jones was inculpatory in nature, we cannot dismiss the prosecution’s oversight by characterizing the comments as collateral to the question of his guilt. Nixon v. State, 533 So.2d 1078, 1089 (Miss.1987) (interpret ing former Rule 4.06(a)(2) of the Uniform Criminal Rules of Circuit Court Practice). But see Mallett v. State, 606 So.2d 1092, 1095 (Miss.1992); Glaskox v. State, 659 So.2d 591, 594 (Miss.1995); Jones v. State, 669 So.2d 1383, 1392 (Miss.1995) (affirming admission of undisclosed peripheral evidence on harmless error grounds). Neither may we, in good conscience, portray the testimony as merely cumulative and therefore inconsequential as in De La Beckwith v. State, 707 So.2d 547, 576-7 (Miss.1997), wherein our supreme court found harmless error in the presentation of undisclosed witnesses because their testimony was similar to that of numerous others and served merely to corroborate more direct evidence of guilt. To the contrary, considering the unexceptional testimony given by the prosecution’s other witnesses, Mims’s admission was likely as compelling as any evidence of guilt before the jury. Our question, therefore, becomes what consequences flow from this.
¶ 6. The procedures to be followed when this type of discovery violation occurs are well-defined. In cases where the prosecution, during the course of the trial, attempts to introduce evidence that has not been timely disclosed the following procedure should be used:
1. Grant the defense a reasonable opportunity to interview the newly discovered witness ...; and
2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
URCCC Rule 9.04(1). Although the decision whether to admit the testimony of a witness whose name is not timely disclosed generally rests within the discretion of the trial court, Overstreet v. State, 369 So.2d 275, 277 (Miss.1979), as the rule indicates, the trial court did have alternatives at its disposal aside from forcing the defense to proceed with only a precious few moments in which to prepare for Jones’s testimony. Where there has been a violation of discovery rules such as this, we would suggest that a trial judge desiring to avoid the distasteful prospect of mistrial, order the case to be continued for *80 an appropriate period of time. See West v. State, 553 So.2d 8, 18 (Miss.1989) (equating motion for mistrial with request for continuance in this context). See also Foster v. State, 484 So.2d 1009, 1011 (Miss.1986) (noting that length of acceptable postponement may vary depending on circumstances). This approach would guard against the sort of prejudice that Mims surely suffered below. With this in mind, we reverse and remand for new trial.
II. THE EVIDENCE IS INSUFFICIENT TO SUPPORT THE VERDICT OF GUILTY.
¶ 7. Mims also contends that the trial court committed reversible error in denying his request for a directed verdiet and subsequent motion for judgment notwithstanding the verdict. He argues that inconsistencies between Carmichael’s testimony and that of her daughters call into question their credibility and thereby create reasonable doubt as to his guilt, thereby contradicting the verdiet. In turn, the State contends that such a determination is primarily the jury’s responsibility, not that of this Court. Although unnecessary to the resolution of this appeal, we nevertheless briefly note our agreement with the State on this point.
¶ 8. Both motions for directed verdict and motions for JNOV challenge the legal sufficiency of the evidence. Noe v. State, 616 So.2d 298, 302 (Miss.1993) (stating that a motion for directed verdict tests legal sufficiency of the evidence); McClain v. State, 625 So.2d 774, 778 (Miss.1993) (stating that a motion for judgment of acquittal notwithstanding the verdict also tests legal sufficiency of the evidence). See also Strong v. State, 600 So.2d 199, 201 (Miss.1992) (stating that the trial judge is bound by the same law whether addressing a motion for directed verdict or addressing a request for a peremptory instruction). Since both require consideration of the evidence before the court when made, this Court properly reviews the ruling only on the last occasion that the challenge was made in the trial court. McClain, 625 So.2d at 778. In this instance, that challenge was quelled when the circuit court denied Mims’s motion for JNOV/new trial. See, e.g., Wetz v. State, 503 So.2d 803, 807-08 (Miss.1987).
¶ 9. Where a defendant moves for JNOV, the trial court considers all of the credible evidence consistent with the defendant’s guilt, giving the prosecution the benefit of all favorable inferences that may be reasonably drawn from this evidence. McClain, 625 So.2d at 778. This Court is authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could not find the accused guilty. Wetz, 503 So.2d at 808 n. 3.
¶ 10. In the case sub judice, however inconsistent the testimony of Carmichael and her daughters may or may not have been regarding certain peripheral matters, they were in complete, unequivocal agreement on the fact that Mims fired three gunshots — one into the air and two more toward their home. Even had Mims’s admission to Jones been excluded due to State’s untimely discovery, the testimony of these three eyewitnesses was more than enough to support the jury’s verdict. See Nash v. State, 278 So.2d 779, 780 (Miss.1973) (noting that testimony of single witness is enough to sustain conviction). Consequently, this assignment of error is without merit.
¶ 11. THE JUDGMENT OF THE CIRCUIT COURT OF THE SECOND JUDICIAL DISTRICT OF JONES COUNTY IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., and COLEMAN, DIAZ, HERRING, KING, PAYNE and SOUTHWICK, JJ., concur.