881 So.2d 851 (2003)
Mary Lynn FAGAN, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-01336-COA.
Court of Appeals of Mississippi.
November 18, 2003.
Rehearing Denied February 3, 2004.
*852 William B. Jacob, Joseph A. Kieronski Jr., Daniel P. Self Jr., Meridian, attorneys for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
*853 EN BANC.
IRVING, J., for the Court.
¶ 1. A Clarke County jury convicted Mary Lynn Fagan of three counts of embezzlement. In her appeal of her conviction and sentence, she alleges that the trial court erred (1) in not dismissing the case based on insufficiency of the evidence, (2) in not granting a mistrial because of the prosecutor's and a witness's reference to a polygraph examination, (3) in allowing the State to use certain documents in violation of discovery rules and a previous order of the court, (4) in allowing testimony of other crimes, and (5) in failing to grant a hearing on a motion for a new trial based on newly discovered evidence.
¶ 2. We find no error in any of Fagan's assertions; therefore, we affirm the rulings of the trial court and the subsequent conviction and sentence.

FACTS
¶ 3. Mary Lynn Fagan worked as a deputy clerk in the Clarke County Justice Clerk's office from 1994 until 1999. After money was discovered missing from the clerk's office, Fagan was indicted for embezzling the missing money. Specifically, she was indicted for embezzling money on three separate occasions: February 19, June 16 and 19, 1999. Throughout 1999, Fagan worked with two other deputy clerks who also received money, issued receipts and made deposits. The State's case was based on circumstantial evidence.

ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 4. Fagan attacks the sufficiency of the evidence on several grounds. First, she contends that there was a common cash drawer and that the State failed to prove that she had exclusive control of it. Second, she argues that the State failed to prove certain elements of the crimes, namely, failure to deposit the funds, ownership of the funds, an intent to defraud, and conversion. She also submits that the evidence was consistent with reasonable theories indicative of innocence.

1. Sufficiency of the Evidence
¶ 5. The financial discrepancies in the clerk's office were investigated by Earl Smith of the State Auditor's office. Smith testified that when he first came to the clerk's office and advised everyone that he was there to do an audit of the clerk's financial records, Fagan came to him and "started to explain to me that the problems that existed were the result of computer problems, and she had a list and she wanted to show me how the computer was skipping receipts." Fagan had previously told Teresa Smith, the clerk, that the problem was with the computer and that she would work with Data Systems to correct the problem.
¶ 6. As already noted, the State's evidence was entirely circumstantial. However, it showed a common thread pointing to Fagan. The clerk testified that there was no problem with the computer and that she did not know that it was possible to backdate receipts on the computer. Another deputy clerk, Shundra Staten, testified that she did not have any knowledge of backdating receipts, that she had never received any money on behalf of the justice clerk's office and kept it for her personal use, and that she had never failed to make a deposit from the justice clerk's office.
¶ 7. The three receipts, underlying the charges against Fagan for mishandling of funds, all had either Fagan's initial or name on them, and when the computer reprinted the receipts, the name of the operator doing the reprinting appeared on the receipts. One of the receipts was received *854 by Fred Kennedy who paid a $452 DUI ticket for his grandson. Kennedy testified that the money for the ticket was given to Fagan. However, the money was not included in the day's deposit. The receipt, retained by the clerk's office, was voided. Of course, Fagan denied voiding the receipt.
¶ 8. Jason Varner testified that he received a ticket on May 21, 1999, for DUI, first offense. He paid a $432 fine on June 16, 1999. He was "pretty sure" that he paid the money for the fine to Fagan. The receipt contains the initials "L.F." Although the fine was paid on June 16, 1999, the computer indicated that the receipt was recorded on June 18, 1998. The money was not listed on the daily receipts, nor was it deposited in the clerk's account in either 1998 or 1999.
¶ 9. Karla Mooney paid a $366 fine for her husband, Michael, on June 15, 1999. Karla testified that she handed the money to Fagan and received a receipt for it. The receipt contained the initials "L.F." The detailed settlement statement for June 15, 1999, did not include the $366 or Michael's name, nor was the $366 included in the bank deposit for June 15, 1999. When Earl Smith had the detailed settlement statement for June 15, 1998, rerun, the $366 entry appeared. However, the detailed settlement statement, which was actually run on June 15, 1998, did not have an entry for Michael Mooney, and the bank deposit for June 15, 1998, did not include the $366 paid for Michael Mooney.
¶ 10. The evidence was that Fagan was the only clerk who knew how to backdate receipts in the computer. Considering this fact, along with the fact that Fagan told Earl Smith that the problem was in the computer, we are satisfied that the evidence was sufficient to sustain the verdict. For us to overturn the jury's verdict on this evidence, we would have to find that reasonable and fair-minded persons could not have found Fagan guilty with respect to one or more of the elements of the offense. Harveston v. State, 493 So.2d 365, 370 (Miss.1986). That is not the case here.
¶ 11. Fagan also asserts that she was at least entitled to a new trial. A motion for a new trial implicates the discretion of the judge, and we will reverse when the trial judge has abused his discretion in denying the motion. Malone v. State, 486 So.2d 360, 366 (Miss.1986). We find no abuse.

2. Reference to the Polygraph Examination
¶ 12. During the redirect examination of the State's key witness, Earl Smith, the following colloquy occurred:
Q. Did you find or anybody else find any problems with that computer?
A. No, sir.
Q. What were the problems with the computer that were making these documents look like this?
A. The problem was 
BY MR. JACOB: Object to lack of foundation.
BY THE COURT: All right, I'll let him testify if he knows as a result of his investigation. Objection overruled. You may answer.
A. As a result of my investigation, it was determined that the problem was that documents were changed, and this is what would have caused what may have been or appeared to be a computer error.
Q. And you said that you did not know if Lynn Fagan changed those things. What did your investigation reveal about that? Who made these changes?

*855 A. I do not know specifically who made the changes other than the fact that the changes were made.
Q. Well, there are two other clerks in the office; is that right?
A. That's correct.
Q. And did your investigation not eliminate the two of them?
BY MR. JACOB: We object to leading and especially in light of the witness' prior answer.
BY THE COURT: Sustained for leading.
Q. (Continuing): What did your investigation reveal about the other two ladies?
MR. JACOB: We object to hearsay now.
BY THE COURT: All right, I'm going to sustained [sic] that counsel.
Q. (Continuing): I don't want anything they told you. What did your investigation reveal about whether the two of them committed this crime?
BY MR. JACOB: Object to hearsay.
BY THE COURT: Well, I'm going to sustain it.
Q. (Continuing): I'm not talking about anything they said to you. In your investigation, your audit, did it reveal their involvement in this?
BY MR. JACOB: Object to hearsay 
BY THE COURT: Well, your question is does he have an opinion of whether the other two are guilty?
BY MR. MITCHELL: No, sir, what did his investigation show?
BY THE COURT: Well, I'm going to sustain the objection.
Q. (Continuing by Mr. Mitchell): Okay, let's go through them one by one. What did you do to rule out the other two Clerks?
BY MR. JACOB: We object to this, your Honor. It is improper redirect, and it's hearsay.
BY THE COURT: Objection is overruled. I think he can answer that question.
Q. (Continuing) What was the first thing you did?
A. Okay, the first thing I did was I went in and looked at the receipts, compared those with daily reports. I secured bank records and looked at such things as who made deposits, who receipted for money. We interviewed each clerk. The other two clerks or all of the clerks were provided with the opportunity to take a polygraph 
BY MR. JACOB: Your Honor, we object.
BY THE COURT: Sustained.
A. (Mr. Smith): We 
Q. No results  you can't say any results of a polygraph 
BY MR. JACOB: May we approach 
Q. The question I have 
BY THE COURT: At the next break, you may  objection is sustained.
Q. (Continuing by Mr. Mitchell): The next question I have is did the other two clerks agree to that?
A. Yes 
BY MR. JACOB: We object.
Q. All right. So, they cooperated 
BY THE COURT: Wait just a minute, counsel.
BY MR. MITCHELL: All right.
BY THE COURT: You have an objection to what, questioning the other two clerks?
BY MR. JACOB: May we approach?
BY MR. MITCHELL: The question wasn't he asked them to take a polygraph; *856 the question is just did they agree to do that.
BY THE COURT: Right, and your objection is sustained. It is not admissible or relevant.
Q. (Continuing): All right, did the two clerks cooperate in every way you asked them to cooperate?
A. Yes, they did 
BY MR. JACOB: We object to this, your Honor, especially in light of the prior statement, the prior question.
BY THE COURT: Well, overruled as to that particular objection, about cooperation during his investigation.
Q. (Continuing): They did cooperate?
A. Yes, they did.
Q. Okay. Did they refuse to do anything you asked them to do to help with the investigation?
BY MR. JACOB: Object to leading.
BY THE COURT: All right, rephrase it. Sustained. You're suggesting the answer.
Q. (Continuing): What if anything did they do  did they fail to cooperate with you?
A. Nothing.
¶ 13. When the above exchange is properly analyzed, it seems readily clear that the prosecutor was not deliberately attempting to circumvent the judge's ruling but was struggling to properly word his questions so as to avoid a hearsay objection to which he was being constantly subjected. It seems clear also that the jury was never informed that the other clerks took, if indeed they did, and passed a polygraph examination.
¶ 14. If the question or comment in issue had been whether Fagan was offered and refused a polygraph examination or whether the other two possible suspects took and passed a polygraph examination, we might have a different view of things. But here, Fagan's defense, at least in part, was that either one of three persons could have taken the money and that it was impossible to tell who did it. Surely, with this type of defense, the jury was entitled to know what the investigation revealed regarding the other two prospects since apparently they were not charged.
¶ 15. We do not believe that the sudden, and apparently unexpected, comment from Smith regarding the polygraph examination nor the subsequent questions by the prosecutor operated to deprive Fagan of a fair trial. Even if some prejudice occurred, it certainly was not of sufficient magnitude to cause reversal where, as here, the defense bypassed an opportunity to have the jury queried as to the effect, if any, which the statement may have had on its ability to render a fair verdict based on the admissible evidence. It is noteworthy that the trial judge offered to give a curative instruction, as well as to withhold ruling on the motion for a mistrial until after he queried the jury. Since Fagan declined the court's offer, she should be made to live with the consequences of her decision, especially since the State produced a strong circumstantial evidence case against her.
¶ 16. Although we disagree that, under the specific facts of this case, the reference to the polygraph examination entitled Fagan to a mistrial, we want to be clear that, as pointed out by Fagan in her brief, offers to take a polygraph examination are not admissible in trial, whether offered by the prosecution or the defense. Weatherspoon v. State, 732 So.2d 158, 162(¶ 13) (Miss.1999). However, automatic reversal is not required when evidence is admitted pertaining to a witness's offer to take a polygraph examination. Id. at (¶ 15). "Whether or not the admission of this type inadmissible evidence requires *857 reversal necessarily requires a case-by-case analysis." Id. Here, the other two clerks did not testify that they had offered to take, or had taken, a polygraph examination. Rather, the investigator, Smith, testified that he offered all of the clerks an opportunity take a polygraph, and the other two clerks agreed to do so. No evidence was admitted as to whether they did or did not take the examination. We find no reversible error in what occurred.

3. Use of Documents
¶ 17. The trial court prohibited the State from utilizing certain documents because they had not been disclosed to Fagan as required by the rules. However, during the defense's case, the prosecution was allowed to use the documents during its cross-examination of Fagan. Fagan, citing Glaskox v. State, 659 So.2d 591 (Miss.1995), argues that the trial court erred in permitting this limited use. We find Glaskox easily distinguishable, as Glaskox involved the willful and deliberate refusal to make reciprocal discovery and an attempt to use certain documents, as a part of the defendant's case-in-chief, even though the documents had not been produced to the State prior to trial. Id. at 593. While it is true that the defendant in Glaskox was attempting to use the documents for impeachment purposes, that is so only because he called the prosecuting witness as an adverse witness as a part of his case. He forewent the opportunity to cross-examine the prosecuting witness during the State's case-in-chief. Id.
¶ 18. We find no evidence in the record that the State willfully withheld production of the documents to get some kind of tactical advantage as did the Glaskox defendant. Moreover, in the case-at-bar, the prosecution did not attempt to introduce the documents as a part of its case-in-chief. We find no abuse of discretion on the part of the trial judge in permitting Fagan to be cross-examined on the documents. This allegation of error is without merit.

4. Other Crimes Evidence
¶ 19. On redirect examination, in response to a series of direct examination questions to Fagan designed to show that someone else may have committed the crimes, the prosecutor asked Carl Smith the following question:
The point I'm getting to is did you find discrepancies that occurred in the office consistent with the ones we've presented here that occurred before the other two clerks were there?
Fagan's counsel objected, but the court overruled the objection, finding that Fagan's counsel had essentially opened the door during his cross-examination with a line of questions designed to show that someone else might have been the culprit. Thereafter, Smith testified that he did find similar problems prior to the other two clerks' employment in the justice clerk's office.
¶ 20. Our review of the record does not reveal that Fagan made an "other crimes" objection when the question was asked. For sure, she objected and stated that she had a motion which was overruled by the trial court. The only objection recorded when the question was asked was an objection that the question was an attempt to skirt a prior order of the court barring such inquiry. Nevertheless, we find no error with permitting the question to be asked and answered. In this case, the identity of the perpetrator was an issue. Rule 404(b) of the Mississippi Rules of Evidence permits evidence of other crimes, wrongs, or acts to prove identity. Fagan does not make a Mississippi Rules of Evidence Rule 403 balancing argument. Therefore, we do not address it.

*858 5. Failure to Grant a Hearing on Motion for New Trial

¶ 21. Fagan complains that the trial court erred in not granting her a hearing on her motion for a new trial. The record reflects that the notice of appeal was filed on August 23, 2001, and the motion for a new trial, based on an allegation of newly discovered evidence, was not filed until August 2, 2002. We agree with the State that the filing of the notice of appeal divested the trial court of jurisdiction to hear the motion. Martin v. State, 732 So.2d 847, 851 (¶) (Miss.1998).
¶ 22. The dissent argues that the allegations of newly discovered evidence contained in Fagan's motion for a new trial warrant a reversal in this case.[1] The dissent, however, does not provide any authority enabling us to consider the merits of the allegations of the motion which was presented to the trial court long after the trial court had lost jurisdiction of the case. If the trial judge lacked jurisdiction, we acquired none. We agree with the trial court that the matter may be presented via a post-conviction relief motion.
¶ 23. Moreover, the motion characterizes the newly discovered evidence as the termination of Teresa Smith due to missing funds which occurred after Fagan's termination. Further, we note that the motion does not allege that Teresa Smith was terminated for appropriation of the specific funds in question here. The fact that Teresa Smith may have taken some funds does not in the least prove that Fagan also did not take other funds. In a post-conviction relief forum, the circumstances giving rise to Teresa Smith's termination, as well as the specifics of the appropriated funds, may be explored for the impact, if any, they may have on Fagan's conviction.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF CLARKE COUNTY OF CONVICTION OF THREE COUNTS OF EMBEZZLEMENT AND SENTENCE OF THREE CONCURRENT TEN-YEAR TERMS, WITH EIGHT YEARS SUSPENDED AND FIVE YEARS' SUPERVISED PROBATION ON EACH COUNT, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, PAY FINE OF $5,000 FOR EACH COUNT AND RESTITUTION OF $33,194.50 FOR COUNT I, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
BRIDGES, THOMAS, LEE AND MYERS, JJ., CONCUR. SOUTHWICK, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MCMILLIN, C.J., CHANDLER AND GRIFFIS, JJ. KING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
SOUTHWICK, P.J., dissenting:
¶ 25. The majority finds that the prosecutors' references to polygraph examinations and to the cooperation of other possible suspects were inadvertent and insignificant; moreover, the error was relinquished as a basis for reversal because the offer to admonish the jury was rejected. Perhaps there was inadvertence, but regardless, I disagree with the latter two conclusions.
¶ 26. With respect, I dissent.
¶ 27. The case was prosecuted based on circumstantial evidence. Fagan worked with two other deputy clerks at the court. *859 The three worked interchangeably, with each receiving money, issuing receipts, and making deposits. There was no direct evidence demonstrating Fagan's conversion of funds. The key jury consideration was whether Fagan was sufficiently likely among the available suspects to have committed this crime. That is why the error here  informing the jury that everyone else had "cooperated" and inferentially had passed polygraph examinations  was so important.
¶ 28. Since this is a circumstantial evidence case, much weight must be given to inferences. In reviewing the conviction, therefore, we should look to the evidence and all reasonable inferences in a light most favorable to the State. Jackson v. State, 815 So.2d 1196, 1202 (Miss.2002). The circumstantial evidence that it was Fagan and not anyone else who converted the money was the following. The manner in which the disappearance of the funds was initially hidden was to alter the computer entry for the payment so as to make it appear that the money had been received the previous year. There was testimony that Fagan knew how to do this. The other employees denied that they knew how to do so. All three of the payments on which the indictment was based had receipts signed by Fagan. As the State explained in its brief, the evidence "supports a finding that Lynn Fagan was the only one of the three who knew how to backdate the computer. Lynn Fagan received the payments that disappeared." There was also testimony that when an investigator first confronted Fagan with the problem, she stated that the problem was with the computer.
¶ 29. If the testimony from other employees was believed that they did not know how to backdate entries on the computer, if the jury concluded that it was more likely that a clerk would convert money for which she had signed the receipt as opposed to converting money receipted by other deputy clerks, if Fagan's initial statement to investigators was taken as suspicious and inculpatory, then the circumstances were available to convict. That was a jury decision.
¶ 30. Taking this closely balanced case, I turn to the error that added inappropriate evidence onto the scale. The district attorney asked investigator Smith what was done to rule out Fagan's co-clerks as suspects. Smith testified that each clerk was given an opportunity to submit to a polygraph examination. Fagan's immediate objection was sustained. The district attorney then told his witness, in front of the jury, not to refer to results of polygraph examinations. Defense counsel asked that the attorneys approach the bench. The judge denied that request until a break in the proceedings. Did the other deputy "clerks agree to do that," meaning, had they agreed to take polygraph tests, was the next question. Again there was an objection. Before it was sustained, which it was, the district attorney managed to state, which at best was a leading question, "so, they cooperated." The court reporter did not type it with a question mark; perhaps it did not sound like a question. Still in front of the jury, the district attorney managed to refer to the matter one more time by stating "The question wasn't he asked them to take a polygraph; the question is just did they agree to do that."
¶ 31. Each ruling by the trial judge was to sustain the objection. In the ensuing motion for mistrial, the trial judge offered the following relief:
If you want me to admonish the Jury and unring the rung bell as you say, I'll be more than happy to do that and then question the Jury whether they will follow the Court's instructions to disregard *860 any questions or reference to any possible polygraph examination by anybody in this case, and then make a ruling depending on how they respond, or would you rather just leave it alone because I'm convinced as of right now that that inference or reference in this trial is not serious enough to justify the granting of a mistrial or result in some miscarriage of justice. It's relatively insignificant in the context of this trial in my opinion.
Fagan's counsel responded to the court's offer by noting, "Your Honor, as to the choices given, we have no choice at this time, but to not say anything further at this stage." It is evident that the trial judge did not much think that the matter could be cured by an instruction. The trial judge also found that the distortions caused by the district attorney's efforts were not very significant.
¶ 32. The inadmissibility of polygraph evidence has been firmly stated: "any evidence pertaining to a witness's offer to take a polygraph, refusal to take a polygraph test, the fact that a witness took a polygraph test or the results of a polygraph test is inadmissible at trial by the State or by the defense." Weatherspoon v. State, 732 So.2d 158, 163 (Miss.1999). Inadmissibility is not open to dispute. Our only task is to determine if the improper evidence likely affected the proceedings.
¶ 33. Error occurred. The prosecution was successful in making the jury aware that there were polygraph examinations, and the inference was present that the other deputy clerks took them, i.e., they "cooperated." When three people are potential perpetrators of a crime and two of them cooperate in the investigation, the third is placed under considerable suspicion. To have opened this line of inquiry would seem based on little more than trying to create that inference.
¶ 34. Before assessing whether this error was correctable, I consider a related issue. Fagan also contends that the lower court improperly allowed evidence of "other crimes" beyond the scope of the indictment. Fagan was indicted for offenses occurring separately in February and June 1999. The record reflects that the original investigation covered many other alleged offenses spanning longer periods of time. An indictment of at least fifty counts was initially issued against Fagan. That indictment was dismissed. Fagan was re-indicted on three counts.
¶ 35. The district attorney questioned investigator Smith about these older examples of missing funds. The witness indicated that of the three deputy clerks employed on the dates mentioned in the indictment, Fagan was the only one who also worked at the clerk's office at the earlier dates at which funds may also have been taken. Investigator Smith was asked whether "discrepancies that occurred in the office [at earlier times were] consistent with the ones we've presented here that occurred before the other two clerks were there?" The trial court overruled Fagan's objection, as well as her subsequent motion for mistrial. The lower court reasoned that Fagan's defense theory of shifting fault to her co-workers created a window through which the State could introduce such evidence.
¶ 36. Criminal defendants are protected from having evidence of other crimes introduced to prove new actions in conformity therewith; this principle is not violated if the other bad acts help established the identity of the perpetrator. M.R.E. 404(b). Even if the other crimes evidence was admissible, the salient point for our review is that again the district attorney dragged in the prohibited issue of "cooperation," which was his oblique approach to the banned polygraph evidence. After *861 asking about these earlier time periods, the prosecutor then asked whether the investigator went "through the same kind of things with the two clerks who worked with Lynn Fagan prior to 1997 to exclude them as possible suspects?" This was asked despite the clear rulings to avoid all reference, direct or indirect, to the polygraph matter. The defense objection quite rightly was that the prosecutor was engaged in "an attempt to circumvent the Court's prior Orders." If the prosecutor had another purpose, it is not apparent. Regardless of whether the former clerks took polygraph tests, the implication was left that they had and passed. The objection was sustained.
¶ 37. The majority helpfully quotes a significant part of the questioning. It concludes that the problems were the result of the prosecutor's being surprised and then struggling to get an answer, never intending to inject the issue of a polygraph. That appears charitable to me but also irrelevant. I would reverse because of effect regardless of intent. Whatever the prosecutor was attempting, what he did was to create this improper prejudice, incurable by an admonishment.
¶ 38. Though the serial references and allusions to polygraph examinations unquestionably were error, and the majority concedes as much, does the error require reversal? Reversal is not automatic upon admission of such evidence. Weatherspoon, 732 So.2d at 163. Instead, what is important is the "nature of the error and the circumstances attendant to its disclosure." Id.
¶ 39. Included in the attendant circumstances are this unambiguous case law that prohibits reference to polygraph examinations, and the fact that before trial it was ordered "that the prosecution and all of its witnesses are limited and prohibited from making any reference, statement or insinuation concerning the taking or not taking of any polygraph examination or any results thereof." Still the evidence came in.
¶ 40. Fagan's refusal to have the jury admonished was not a waiver of her ability to challenge the evidence. I agree with the trial judge that this was one of those rare situations in which the error was beyond cure. The trial judge inferred this in his reference to the futile effect of trying to un-ring a bell. The request for a jury admonishment is not pure but mandatory formalism. If an instruction has a reasonable potential to cure the error, then it must be requested. When it does not and in fact may exacerbate the error, no procedural default occurs in refusing to have one given. Vickery v. State, 535 So.2d 1371, 1380 (Miss.1988).
¶ 41. It is true that the trial judge is in the best position to determine the seriousness of the effect on a jury. Blocker v. State, 809 So.2d 640, 643 (Miss.2002). That premise, though, does not cancel our obligation deferentially to review the effect of trial errors. Once the trial was over and the complete evidence available to the jury was known, this error was too substantial. Knowing that the other clerks had cooperated and Fagan had not, knowing that each clerk was in a similar position to have made the conversion, and knowing that there were some credibility choices to make that would lead to a guilty or not guilty determination, the jury in reaching its verdict cannot reliably be said to have been untainted by this unquestionably inappropriate injection of the polygraph examination point. The "nature of the error and the circumstances attendant to its disclosure" are what lead us to conclude that reversal is required. Weatherspoon, 732 So.2d at 163.
¶ 42. Fagan's final argument attacks the lower court's denial of her motion for new trial. She contends that newly discovered *862 evidence, namely the dismissal of Clarke County Justice Court Clerk Theresa Smith based on funds misappropriated after Fagan's termination, would likely produce a different result at a new trial. That is an important additional matter that shows the need for a new trial in light of the error regarding the polygraph examination.
¶ 43. I would reverse and remand for a new trial or such other proceedings as are appropriate.
McMILLIN, C.J., CHANDLER AND GRIFFIS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] It should be pointed out that this was Fagan's second post-trial motion. The first motion, challenging, inter alia, the sufficiency and weight of the evidence was timely filed and denied.