LEE, J.,
For The Court:
¶ 1. Calvin Anthony Blakley was found guilty of the transfer of a controlled substance (i.e., cocaine) for which he received an enhanced penalty, and was sentenced to fifteen years under Miss.Code Ann. § 99-19-81 (Rev.2000), without the hope of parole or probation. Blakley now appeals the verdict and sentence and presents two issues: (1) whether he was denied his constitutional right to a speedy trial, and (2) whether the trial court erred and condoned a discovery violation when it allowed Officer Davis to testify regarding a photographic lineup. We conclude these issues are without merit and affirm the trial court.
FACTS
¶ 2. Blakley was indicted on four counts for the sale or transfer of cocaine under the enhanced penalty and as a habitual offender. However, he did not receive a trial on all of these counts at once. Instead, Count TV for the sale or transfer of cocaine which occurred between Blakley and Officer Davis, an undercover agent, was severed and tried separately. The proceedings regarding Count IV are what we are reviewing on appeal.
¶ 3. Blakley’s first issue is based on the denial of his constitutional right to speedy trial. The record discloses that several continuances were granted in this case. Additionally, the record reveals that Blak-ley’s motion to dismiss for lack of speedy trial was heard on May 23, 2000, the day of Blakley’s trial. The trial court denied this motion. To avoid repetition we will take a closer review of the sequence and reasons for the continuances in our discussion of this issue. Blakley’s second issue asserts that a discovery violation occurred in relation to the use of a photographic lineup by the State during the trial.
¶ 4. This issue focuses on the identification of Blakley as the individual involved in the crime. The record shows that Officer Davis, an undercover agent, was placed in an automobile equipped with video and audio tapes to make undercover drug purchases. Eventually, Officer Davis encountered an individual whom he later identified as Blakley and inquired about making a drug purchase from him. Blakley instructed him to circle the block. After doing so, Officer Davis purchased twenty dollars worth of crack cocaine from Blak-ley. This transaction was recorded by the videotape equipment in Officer Davis’s automobile. Testimony during the trial showed that several days after the drug purchase, Officer Davis was presented with a photographic lineup by Officer Pon-thieux which contained a photograph of Blakley.
¶ 5. Officer Davis identified Blakley as the perpetrator from the photographic lineup. Thereafter, Officer Davis drew an arrow to Blakley’s picture, as well as putting his initials, the date, and time beside his photograph. The record reveals that neither Officer Davis nor Officer Pon-thieux made a narrative to document the photographic lineup. This is where Blak-ley asserts an error occurred. Blakley concedes that he received a copy of the photographic lineup; however, he did not receive a narrative in regard to any anticipated testimony by Officer Davis, the State’s witness. With these facts in mind, in issue two we will more specifically address whether the failure to provide a narrative with the photographic lineup constitutes a discovery violation.
DISCUSSION
I. WHETHER BLAKLEY WAS DENIED HIS CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL.
*329 ¶ 6. Blakley argues that he was denied his constitutional right to a speedy trial; therefore, his conviction should be reversed and his charge dismissed. Blak-ley argues that he never agreed to any continuances and that he has desired to go to trial since his arrest on April 30, 1998. Blakley contends that not only was the delay unconstitutional, but the delay in trying his pending charge also prejudiced him. Blakley argues that he was prejudiced because this charge, as well as his other pending charges did not allow a change in his custody level and prevented him from participating in school programs or attending alcohol and drug abuse treatment programs.
¶7. An accused’s constitutional right to a speedy trial attaches when the person is effectively charged with a crime. Skaggs v. State, 676 So.2d 897, 900 (Miss.1996); Noe v. State, 616 So.2d 298, 300 (Miss.1993). This Court determines whether a criminal defendant’s right to a speedy trial has been violated, by balancing four factors pronounced by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Under Barker we consider: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant has asserted his right to a speedy trial, and (4) whether the defendant has been prejudiced by the delay. Id. No one of the four factors determines whether an individual’s constitutional right to speedy trial has been violated. Skaggs, 676 So.2d at 900.
¶ 8. A delay of eight months has been found to be presumptively prejudicial. Smith v. State, 550 So.2d 406, 408 (Miss.1989). A delay of eight months or longer triggers further inquiry into the Barker factors. Jaco v. State, 574 So.2d 625, 630 (Miss.1990). In Blakley’s case, a motion to dismiss contained within the record states that he was arrested on April 30, 1998; therefore, his constitutional right to a speedy trial began to run on this day. Approximately two years had elapsed between his arrest and his trial. While this lapse is presumptively prejudicial, this time lapse alone does not mandate reversal; rather, it requires that we examine closely the remaining factors. See Handley v. State, 574 So.2d 671, 676 (Miss.1990).

a. Reason for delay

¶ 9. We must keep in mind that “The [S]tate bears the risk of non-persuasion regarding the reasons for delay and must show whether the defendant caused the delay or that good cause existed for the delay.” Fleming v. State, 604 So.2d 280, 299 (Miss.1992). The State argues that the delays were caused by several factors, such as: Blakley’s incarceration on other convictions, the trial court’s own motion due to exigent circumstances (i.e., the trial judge was ill), and on the court’s own motion due to an overcrowded court docket in Harrison County.
¶ 10. On January 11, 1999, the State and defense entered a joint motion for continuance. This continuance was requested by both parties because Blakley had a new indictment and had to be transported for a trial setting. The trial was continued until May 24, 1999. It has been said that “[a] defendant cannot complain of a delay attributable to a continuance by agreement.” Horton v. State, 726 So.2d 238, 246 (¶ 35) (Miss.Ct.App.1998). Additionally, although not clear on the length of the delay, the record shows that counsel for Blakley sought a continuance on May 24, 1999, due to his involvement in a capital case. In Vickery v. State, 535 So.2d 1371, 1376 (Miss.1988), the Mississippi Supreme Court explained that when the accused requests a continuance it is attributed to him or her and stops the running *330 of the clock. These delays are deducted from the total number of days before trial. Id. Along with these continuances, there were also two continuances prompted by the trial court.
¶ 11. On July 9, 1999, the trial court entered an order declaring that due to exigent circumstances, the court had cancelled its docket, and the trial was continued until September 20, 1999. On April 19, 2000, an order was entered by the trial court continuing the case to May 22, 2000, due to an overcrowded docket. Delays by the trial court because of an overcrowded docket do not weigh as heavily against the State as if it was a deliberate or purposeful delay. Skaggs, 676 So.2d at 901.
¶ 12. It appears that since the court’s actions are counted as that of the State, there are multiple occasions where the delay is attributable to the State. Nevertheless, the record does not reflect deliberate or purposeful delays by the State. In fact, the record contains a couple of orders that were entered at the request of the State to transport Blakley from the Mississippi State Penitentiary to Harrison County Detention Center so he would be present for his trial on the charge in the case at bar. Additionally, since circumstances such as an overcrowded docket have been held to constitute good cause for delay, the delays will not be counted heavily against the State.

b. Assertion of right

¶ 13. Blakley initially raised the speedy trial issue in his motion for production and inspection filed on January 29, 1999. Additionally, the record discloses that on May 22, 2000, Blakley filed a motion to dismiss which incorporated a prior motion to dismiss based on the violation of his constitutional right to a speedy trial. Regardless, it has been stated that a demand for dismissal due to the violation of one’s right to a speedy trial is not the same as a demand for a speedy trial. Perry v. State, 637 So.2d 871, 875 (Miss.1994). A motion for dismissal seeks a discharge and not a trial. Id. Furthermore, while an accused is under no duty to bring himself to trial, “he gains far more points under this prong of the Barker test where he has demanded a speedy trial.” Id. (quoting Jaco v. State, 574 So.2d 625, 632 (Miss.1990)). However, Blakley did not have his motion to dismiss heard until the day of his trial on May 23, 2000. Therefore, this factor does not weigh heavily in the favor of Blakley.
c. Presence or absence of prejudice
¶ 14. “Prejudice is assessed in light of the interest of the defendant which the right to a speedy trial is designed to protect: 1) prevention of oppressive pretrial incarceration, 2) limitation of the possibility of impairment of defense, and 3) minimization of anxiety and concern of the accused.” Bryant v. State, 746 So.2d 853, 865-66 (¶ 51) (Miss.Ct.App.1999). Blakley claims he was prejudiced by the delay in his trial because he suffered a decreased custody status while incarcerated in the custody of the Mississippi Department of Corrections and was unable to participate in education or rehabilitation programs due to this pending charge. While this might indeed be true, beyond Blakley’s mere assertion, he has offered no evidence to support his argument; therefore, this element is not weighed in his favor.
¶ 15. None of the Barker factors weigh particularly heavily either in Blak-ley’s favor or against the State. Commonly, this Court will deny a defendant’s speedy trial claim when “the delay is neither intentional nor egregiously protracted, and where there is a complete absence of actual prejudice.” Rhymes v. State, 638 So.2d 1270, 1275 (Miss.1994). In this case, *331 the record does not disclose that there was an intentional delay by the State, or that Blakley suffered actual prejudice in his case. Accordingly, we reject Blakley’s constitutional speedy trial claim and conclude that this issue is without merit.
II. WHETHER THE TRIAL COURT ERRED WHEN IT ALLOWED OFFICER DAVIS TO TESTIFY REGARDING A PHOTOGRAPHIC LINEUP.
¶ 16. Blakley contends that the trial judge allowed a violation of Uniform Rules of Circuit and County Court Practice Rule 9.04 when he allowed Officer Davis to testify regarding the identification of Blakley in a photographic lineup. Blak-ley asserts that it was error because prior to trial he requested this information, and while the State provided a copy of the photographic lineup, it did not provide a narrative of Officer Davis’s testimony regarding the lineup. The State counters this argument by asserting that a copy of the “photo spread” was sufficient to meet Blakley’s discovery request. Our standard of review for examining a claim of a discovery violation is as follows:
Our standard for review is whether the trial court abused its discretion in its decision. This Court must decide whether the ... court could have entered the order which it did. Under this standard, this Court will affirm unless there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors.
Graves v. State, 767 So.2d 1049, 1051-52 (¶ 6) (Miss.Ct.App.2000) (citations omitted).
¶ 17. With this standard in mind, we note that the purpose of the discovery rules is to prevent unfair surprise. Robinson v. State, 508 So.2d 1067, 1070-71 (Miss.1987).
¶ 18. Looking at Blakley’s argument as it pertains to the element of surprise, we note that he does not contend that he was not furnished with the information that Officer Davis would be called by the State as a witness at trial.
¶ 19. The record reflects the following sequence of events: (1) On February 14, 1998, Officer Davis made a drug purchase from an individual he identified as Blakley, as well as a written report regarding the transaction between him and Blakley, (2) on February 19, 1998, Officer Davis was presented with a photographic lineup and identified Blakley as the perpetrator, and (3) Blakley was provided a copy of the photographic lineup on January 2, 1999, which was approximately one year and four months prior to the trial of Blakley. The lineup contained the initials of Officer Davis next to Blakley’s photograph, as well as the date and time. The record discloses that no additional narratives were made by Officer Davis. Blakley asserts that there is no question that a photographic lineup is discoverable and cites Johnson v. State, 491 So.2d 834, 836 (Miss.1986). Typically this case has been cited for the proposition that the discovery rule may not be circumvented merely by claiming that the evidence is offered for impeachment purposes or in rebuttal testimony. See Nicholson v. State, 704 So.2d 81, 88-89 (¶ 42) (Miss.1997); Glaskox v. State, 659 So.2d 591, 593 (Miss.1995); Boches v. State, 506 So.2d 254, 262 (Miss.1987). Nevertheless, we agree that it also asserts that when a defendant, such as Blakley, has been identified from a photographic lineup it is discoverable upon the request of the defendant. Johnson v. State, 491 So.2d 834, 836-37 (Miss.1986). When considering the fact that the State provided a copy of the photographic lineup to Blakley, along with the surrounding circumstances in this case, *332 we conclude that the State sufficiently-complied with the law.
¶ 20. As mentioned earlier in our discussion, a portion of Blakley’s argument regarding the potential discovery violation is based on the fact that he was surprised by the testimony of Officer Davis regarding the photographic lineup. We fail to see the surprise. The records show that the State properly provided a copy of the photographic lineup containing Blakley’s picture well in advance of his trial. Since Blakley had the photographic lineup in his possession, he cannot claim unfair surprise from the oral statements given by Officer Davis regarding the photographic lineup. It is only reasonable that there would be testimony at trial regarding the identification of Blakley in the charged crime. Additionally, testimony of the identification of Blakley from the photographic lineup was cumulative. Officer Davis had already identified Blakley from a videotape of the transaction and had made an in-court identification of him.
¶ 21. Even though we conclude that no discovery violation occurred, we recognize that once Blakley raised an objection to the testimony regarding the photographic lineup the trial judge properly proceeded with a hearing outside the presence of the jury. During this hearing the trial judge allowed counsel for Blakley to cross-examine Officer Davis regarding the photographic lineup. Officer Davis’s testimony, as well as testimony from fellow Officer Ponthieux, established that there was no narrative documenting the photographic lineup. Thereafter, counsel for Blakley requested a continuance. The court concluded the following:
[although it certainly would be the better course of procedure for the investigators to document that in their investigative file, I do feel like Mr. Davis [i.e., Blakley’s counsel] was certainly on sufficient notice that a photographic lineup had been performed, and the general course that this court has seen lawyers, including Mr. Davis, do is simply to object and request a suppression hearing on a photographic lineup.
That’s really all that needs to be done because I don’t think any outside investigation of the other individuals in the photographic lineup need to occur because all we need to look at are the photographs themselves....
Thereafter, the court denied the motion for continuance. Counsel for Blakley continued to assert that he was not adequately prepared for a photographic lineup defense. The trial court inquired as to how much time he would need, whether he could be prepared overnight. See Box v. State, 437 So.2d 19, 23 (Miss.1983) (Robertson, J. concurring). Counsel for Blak-ley responded “no,” that it would take weeks to prepare. The trial court disagreed and the trial continued. Due to our conclusion that the State sufficiently complied with Blakley’s discovery request, we find no error in this procedure. The trial judge did not abuse his discretion in allowing testimony regarding the photographic lineup. Therefore, we find this issue without merit.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF TRANSFER OF A CONTROLLED SUBSTANCE AND ENHANCED SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS AN HABITUAL OFFENDER IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., PAYNE, *333 BRIDGES, THOMAS, MYERS AND CHANDLER, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.