854 So.2d 1 (2003)
Harry Dale BARNES, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-00746-COA.
Court of Appeals of Mississippi.
March 11, 2003.
Rehearing Denied June 17, 2003.
Certiorari Denied September 11, 2003.
*3 Scott Joseph Schwartz, James R. Hayden, Hattiesburg, attorneys for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
Before KING, P.J., BRIDGES and LEE, JJ.
BRIDGES, J., for the court.
¶ 1. The grand jury of Simpson County indicted Harry Dale Barnes for the murder of his wife, Myrtis Ruebin. The Circuit Court of Simpson County convicted Barnes of manslaughter and sentenced him to twenty years in the custody of the Mississippi Department of Corrections. Barnes moved for JNOV or new trial, in the alternative, and the court denied his motion. Barnes perfected his appeal to the Court.
STATEMENT OF THE ISSUES
I. DID THE COURT ERR IN DENYING BARNES'S MOTION TO SUPPRESS HIS SECOND STATEMENT TO THE POLICE?
II. DID THE COURT ERR IN DENYING BARNES'S MOTION FOR CHANGE OF VENUE?
III. DID THE COURT ERR IN ALLOWING THE STATE TO INTRODUCE BARNES'S GUN HOLSTER AT TRIAL?
IV. DID THE COURT ERR IN OVERRULING BARNES'S MOTION FOR DIRECTED VERDICT?
V. DID THE COURT ERR IN GRANTING INSTRUCTIONS CONCERNING MANSLAUGHTER AS A LESSER-INCLUDED OFFENSE?
VI. DID THE COURT ERR IN DENYING BARNES INSTRUCTIONS ON REASONABLE DOUBT AND CIRCUMSTANTIAL EVIDENCE?

FACTS
¶ 2. According to Harry Barnes, he got into an argument with his wife, Myrtis Ruebin, about their finances. The argument became heated, and Ruebin drew a snub-nosed .22 revolver and pointed it at Barnes. Barnes responded by drawing his long-barreled .22 revolver, and a scuffle ensued, with Barnes and Ruebin grappling with each other. During the scuffle, Barnes shot Ruebin with the long-barreled.22 revolver in her temple, and Ruebin collapsed.
¶ 3. Barnes called 911, and was taken into custody after emergency services responded to his call. Barnes was interviewed twice; the first time he refused to speak, and the second time he waived his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). During the second interview, approximately eighty-five minutes after the first, Barnes was informed that his wife had died of her injuries. We will discuss additional facts as we consider the issues before us.

ANALYSIS

I. DID THE COURT ERR IN DENYING BARNES'S MOTION TO SUPPRESS HIS SECOND STATEMENT TO THE POLICE?
¶ 4. Barnes argues that his second statement to the police regarding the circumstances of his wife's unfortunate demise violated his Miranda rights, as he was not given sufficient cooling off time from his prior refusal to talk. Once *4 Barnes invoked his right against self-incrimination, the police were required to stop interrogating him, and his rights must be "scrupulously honored." Jones v. State, 461 So.2d 686, 699 (Miss.1984). The police could not resume interrogation unless three conditions were met: (1) there was an adequate cooling off period; (2) there was a reasonable basis for inferring that Barnes had voluntarily changed his mind; (3) new and adequate Miranda warnings were given to Barnes. Id. at 699, 700, 86 S.Ct. 1602.
¶ 5. Over an hour had passed from the time Barnes had invoked his right to remain silent; the police read him his rights again, and Barnes then signed the waiver and began to speak freely. In Mississippi, passage of an hour is deemed sufficient cooling off time. Griffin v. State, 504 So.2d 186, 195 (Miss.1987). Barnes expressed no desire to speak with an attorney, and in fact said several times that he wished to speak. The court, on Barnes's motion, ordered certain portions of the second statement redacted to prevent hearsay testimony from reaching the jury. There is no evidence of coercion or other improper action by the police and we find that the court did not err in admitting Barnes's second statement into testimony.

II. DID THE COURT ERR IN DENYING BARNES'S MOTION FOR CHANGE OF VENUE?
¶ 6. Barnes argues that the court should have granted his motion for change of venue. The denial of a motion for a change of venue is within the sound discretion of the trial court, and we will not disturb it without evidence of an abuse of discretion. Porter v. State, 616 So.2d 899, 905 (Miss.1993); Shook v. State, 552 So.2d 841, 849-50 (Miss.1989). A presumption of the inability to conduct a fair trial in a given venue arises when the defendant presents together with his motion two affidavits affirming that inability. Porter, 616 So.2d at 905. Barnes properly filed a motion for change of venue, and the court found that Barnes had presented sufficient evidence to raise the presumption.
¶ 7. The State presented three witnesses from Simpson County to rebut the presumption. Their first witness was Angela Blackwell, who worked for the Simpson County Board of Supervisors. She testified that she was aware of the case, but knew no details. She also testified that she was unaware of pre-trial publicity, as she did not read the newspaper, and knew of no ill will towards Barnes in Simpson County, and finally that she believed that Barnes would receive an impartial trial in Simpson County.
¶ 8. The State's second witness was Sue Griffith, an employee of the Simpson County Tax Assessor's Office. She testified that she did not know either Barnes or Ruebin, and that she had never heard the case discussed. She did not take the local newspaper. She also testified that she did not know of any ill will towards Barnes in Simpson County.
¶ 9. The State's third witness, Alexander McCullum, worked at McGuffee Drugs in Mendenhall, and knew both Ruebin and Barnes. McCullum testified he was unaware of any pre-trial publicity that would prejudice Barnes's right to a fair trial, and that he did not read the local paper. McCullum further testified that he did not know of anyone with a grudge against Barnes.
¶ 10. Barnes countered with the testimony of Rev. Jeremiah Drummond, who lived in Simpson County and knew both Ruebin and Barnes. Rev. Drummond testified that he had heard people in the community discussing the case, and that he believed that Barnes would not receive a *5 fair trial in Simpson County, especially in the light of the pre-trial publicity.
¶ 11. The court held that the State had met its burden of showing that Barnes could receive a fair trial in Simpson County. The court also stated that if during voir dire it determined that a fair and impartial jury could not be selected, it would order a change of venue sua sponte. See Harris v. State, 537 So.2d 1325, 1329 (Miss.1989). During voir dire, the court struck several jurors who indicated that they either knew a great deal about the case, or knew the victim personally, or felt they might not be impartial. The court also accepted several challenges for cause, as well as the full number of peremptory challenges. The court then asked the State and Barnes if they had any objections to the voir dire process as conducted by the court. They did not.
¶ 12. Taking these facts together, it is apparent to this Court that the court below acted scrupulously to protect Barnes's right to a fair trial. The trial court conducted its inquiry into the appropriateness of changing venue diligently, and on the record reserved its right to change venue sua sponte if necessary. There is no error here.

III. DID THE COURT ERR IN ALLOWING THE STATE TO INTRODUCE BARNES'S GUN HOLSTER AT TRIAL?
¶ 13. Barnes alleges that the court erred in permitting the State to introduce the holster of his gun as evidence in the trial, because it was not properly made part of discovery. Potential errors in discovery are reviewed for an abuse of discretion, with an emphasis on preventing unfair surprise. Blakley v. State, 791 So.2d 326, 331 (¶ ¶ 16-17) (Miss.Ct.App. 2001). The holster was first disclosed on the Friday before the trial began. The court allowed Barnes to examine the holster, and Barnes argued that it was either outside the chain of custody or irrelevant. But Barnes did not claim unfair surprise at trial, as he does now, nor did he ask for a continuance, nor does he explain how he was prejudiced. Rule 9.04 of the Uniform Circuit and County Court Rules requires Barnes to have sought a continuance or mistrial, which he did not. Kelly v. State, 778 So.2d 149, 152 (¶ ¶ 12-13) (Miss.Ct.App. 2000).
¶ 14. Accordingly, we find no error.

IV. DID THE COURT ERR IN OVERRULING BARNES'S MOTION FOR DIRECTED VERDICT?
¶ 15. Barnes argues that the State failed to prove its case beyond a reasonable doubt at the close of its case in chief, and that he should properly have been granted a directed verdict. We review the denial of a motion for a directed verdict in the light most favorable to the jury verdict. Gleeton v. State, 716 So.2d 1083, 1087(¶ 14) (Miss.1998). We will only reverse the denial of a motion for a directed verdict if reasonable and fair-minded jurors could only find the defendant not guilty. Id.
¶ 16. The State argues incorrectly in its brief that the testimony of Dr. Steven Hayne at trial supported their theory of murder. Although Dr. Hayne was capable of testifying that Barnes's statement contradicted the forensic evidence, which demonstrated that Barnes could only have shot Ruebin from behind, the State never elicited this testimony at trial. During the testimony of Dr. Hayne, Barnes moved to prevent Dr. Hayne from testifying about the direction from which the fatal shot came. The State vigorously argued against Barnes's motion outside the hearing of the jury, and the court found for the State, denying Barnes's motion. Inexplicably, the State chose not to *6 elicit the only testimony available that conclusively provided evidence that Barnes's statement to the police was inconsistent with the actual happenings of Ruebin's death.
¶ 17. The State is only saved from reversal by the salutary fact that in the videotaped confession Barnes stated that Ruebin was killed by a bullet from the snub-nosed .22 caliber revolver, when in fact Starks Hathcock, the State's firearms expert, stated that the bullet that killed Ruebin did not come from the snub-nosed.22 caliber revolver. This contradiction of Barnes's statement is more than sufficient to raise a question of fact that was properly brought before the jury, despite the fact that Dr. Hayne's more damning evidence never saw the light of day.
¶ 18. Were it not for the testimony of Hathcock that the snub-nosed revolver did not fire the bullet that killed Ruebin, Barnes would be entitled to a directed verdict, as no other evidence presented contradicted Barnes's story. However, the evidence concerning which pistol fired the deadly bullet suffices to bring the question of guilt before the jury, as a reasonable juror could have found Barnes guilty. We find that the court did not err in denying Barnes's motion for a directed verdict.

V. DID THE COURT ERR IN GRANTING INSTRUCTIONS CONCERNING MANSLAUGHTER AS A LESSER INCLUDED OFFENSE?
¶ 19. Barnes assigns as error the court's granting of the State's instructions on manslaughter as a lesser-included offense of murder. When there is a jury issue on the question of murder, the defendant cannot object to a grant by the court of a manslaughter instruction. Crawford v. State, 515 So.2d 936, 938 (Miss.1987). When presented with facts from which the jury could infer the predicate state of mind of the defendant, it is permissible for the jury to use such inferences to find the defendant guilty of manslaughter rather than murder. Jackson v. State, 740 So.2d 832, 834(¶ 8) (Miss.1999).
¶ 20. Barnes and Ruebin were involved in a heated physical struggle, each holding a gun. The evidence presented to the court indicated that Barnes's statement erred on the fact of which gun fired the fatal shot. Additionally, the jury could reasonably have inferred from the evidence that Barnes became angry and then shot Ruebin. We find that the court did not err in issuing an instruction on manslaughter, because the facts before the jury allowed the inference that Barnes shot and killed Ruebin in the heat of passion.

VI. DID THE COURT ERR IN DENYING BARNES'S REQUESTED INSTRUCTIONS ON CIRCUMSTANTIAL EVIDENCE?
¶ 21. Barnes assigns as error the court's denial of two defense instructions, one of which instructed the jury of the State's burden to prove its case beyond a reasonable doubt, and the other which was a classic circumstantial evidence instruction. A circumstantial evidence instruction is not proper when there is direct evidence of the crime presented to the jury, and such evidence can include statements by the defendant as well as the testimony of any eyewitnesses. Price v. State, 749 So.2d 1188, 1194 (¶ ¶ 16-18) (Miss.Ct.App.1999). The elements of manslaughter are "the killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense." Miss.Code Ann. § 97-3-35 (Rev.2000). According to Barnes's statement, Ruebin died from a gunshot wound to the head resulting from an argument *7 and physical struggle with Barnes over household finances. Barnes's statement presented a prima facie case for manslaughter, and the court was fully justified in refusing Barnes's requested instruction on circumstantial evidence.

CONCLUSION
¶ 22. The State had evidence that on its face contradicted Barnes's story. Starks Hathcock's testimony directly refuted Barnes's statement that the snub-nosed .22 revolver fired the bullet that killed Ruebin. Additionally, Barnes's own statement that he shot his wife during an armed struggle following a heated argument about household finances easily supports the theory of manslaughter, and the inclusion of an instruction for manslaughter as a lesser-included offense of murder.
¶ 23. THE JUDGMENT OF THE SIMPSON COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, AND CHANDLER, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.